Comstock, Oh. J.
 

 The counsel for the defendant insisted, in the court below, and he has also claimed in- this court, that none of the dealings in question occurred between the plaintiff ahd the defendant; in other words, that Perry lent the money represented by the drafts, and that the plaintiff discounted the drafts for him. In this view of the case, it is urged -that the action must fail, first, because the drafts are void, and, secondly, because there was no loan or advance of money between the parties tó the suit. I am of opinion that this is the correct theory of the facts of the case. We must -determine the question by the statement of the Supreme Court made for the purpose of a review in this court; and we are not at liberty to look elsewhere, and form our own independent conclusions. The obvious import of that statement is, that although Perry,. in those transactions, acted on the request of Lynch, the defendant’s cashier, nevertheless, he was in reality the lender of the money on which the drafts were based. It seems that he kept a continuous" account at the bank, which was good, on each occasion when he drew his checks, for the sums of money represented in the several drafts. For each check which, when
 
 *494
 
 charged to him, transferred so much of his funds to the bank, he received a draft. The transactions certainly had all .the forms of a loan, there being, on the one side, an actual advance of money, and, on the other, the issuing of a post-dated security therefor. I think, also, that the Supreme Court, in making its record of the facts, intended to be understood as saying that these dealings were loans from Perry to the defendant, not in form merely, but according to the actual meaning of the parties. The language of the record is explicit, that the plaintiff discounted the drafts for Perry and loaned to him the funds parted with, and did not loan the same, or any part thereof, to the defendant, or for its use or benefit. Finding no room for any other interpretation of the statement, I shall assume that the drafts in question were issued by the defendant’s bank in consideration óf an equal amount of moneys loaned to it by Perry, and that Perry, on his own account, indorsed them to the plaintiff’s bank, which discounted them for him.
 

 Proceeding now to the questions of law which arise in the case, upon this understanding of the facts, it is claimed, on the part of the defendant, that the drafts were' illegal and void, because they were issued in violation of the statute of 1840 against time-bills and notes, which declares that “ no banking association or individual banker, as such, shall issue, or put in circulation, any bill or note of such association or individual banker, unless the same shall be made payable on demand, and without interest.” (Stat. of 1840, p. 306, § 4.) In an opinion which I prepared upon this case, after the first argument, during the last year, I came to the conclusion, for which my reasons were stated at some length, that a post-dated draft, taking effect by delivery, was a time-draft, and was within the intent and policy of the 'prohibition declared by this statute. I am still of that opinion; but we do not'pass upon the question, because the result of the present controversy does not depend upon the correctness or incorrectness of that conclusion; ■
 

 Assuming that-these drafts do fall within the prohibition of that statute, it is next contended that they are, for that reason, null' and void, so that no holder, having, as the plaintiff must
 
 *495
 
 have had, notice of their true character, can maintain an action upon them. For all the purposes of the case, the soundness of this position will also be assumed, upon the direct authority of
 
 Leavitt
 
 v.
 
 Palmer
 
 (3 Comst., 19), decided in this court. If the question were now a new one, I should entertain the opinion, certainly with diffidence, that the decision here referred to went far' beyond the intention of the legislature. After the prohibitory words of the statute above quoted, the same section proceeds to declare, that “ every violation of this section, by any officer or member of a banking association, or by any individual banker, shall be deemed and adjudged a misdemeanor, punishable by fine or imprisonment, or both, in the discretion of the court having cognizance thereof.” There is, no doubt, a principle of the common law, that illegal and prohibited contracts are void, without being so expressly declared by any statute. But there is also another principle, equally well ascertained, and more beneficent in its results, that no party shall set up his own illegality or wrong to the prejudice of an innocent person. He can set it up when the legislative power not only forbids to make the contract, but declares it to be void. But the logic of the law, and certainly its morality, are not opposed to the doctrine that the legislature may prohibit the contract and punish the guilty parties, and yet leave the contract to stand in favor of innocent persons not included in the terms of the prohibition. This, I "think, is a just result from the decision of this court in
 
 Tracy
 
 v.
 
 Tallmadge
 
 (14 N. Y., 162), and of the principles which underlie that decision. In regard to the statute now in question, reading the whole of the prohibitory section, it seems to me the intention of the legislature was to forbid bankers, and officers and members of banking associations, to issue contracts of a certain description, and to punish them if they violated the law, but not to enable them to take advantage of their own wrong by repudiating their own obligations. There is no present occasion to pursue this subject further, because, in the view which we take of the questions yet to be considered, the plaintiff’s rights do not necessarily depend on the validity of the drafts,
 

 
 *496
 
 I proceed, therefore, next
 
 to
 
 observe that a party dealing with one of these banks, and taking from it a security which the statute prohibits, can reject the security; if it be regarded as void, and recover the money or value which he advanced on receiving it. The general principles involved in this proposition, have been more than once carefully considered in this court, and I think the very point has been fully determined.
 
 (Tracy
 
 v.
 
 Tallmadge,
 
 14 N. Y., 162;
 
 Curtis
 
 v. Leavitt, 15
 
 Id.,
 
 9; Sacketts
 
 Harbor Bank
 
 v.
 
 Codd,
 
 18
 
 Id.,
 
 240.) The argument for the defendant against this position, rests wholly on the idea that Perry, in receiving the post-dated drafts, was as much a public offender as the bank or its officers issuing them. Assuming these instruments to have been issued contrary to law, and that they are void, then if we also consider that both the parties to these dealings were offenders, and equally so, the consequence would probably follow that Perry, if he were now the plaintiff, not only could not recover on the drafts, but could not maintain his suit for the money lent. But such were not the relations of both the parties to these transactions. Whatever there was of guilt in the issuing of the 'drafts, it was the creature of the statute. There is no rule of ethics or principle of the common law, against the issue of time obligations by banks or bankers. The offence is therefore precisely of the nature, form and proportions which the legislature have declared. By that authority, .and that alone, the bank is prohibited from issuing, but not the dealer from receiving; and the punishment is denounced solely against the individual banker, or the officers, agents and members of the association. The same power which created the offence, has designated the criminal parties. This designation is made by the very terms in which the prohibition is clothed and the punishment prescribed. The statute is wholly incapable of a construction which would sustain an indictment against a customer or dealer, who should receive from a banker a post-note for his money, his property,' or his services; and, yet without such a construction, there can be no pretence for saying that he is in any sense a public offender. We are of opinion that the case, .in this respect, is
 
 *497
 
 undistinguishable from those referred to, and we consequently come to the conclusion that if the issuing of the draft was prohibited, and if they were also void, Perry, nevertheless, had a right.to demand and-recover the sums of monej which he actually loaned to the defendant. The loans, themselves, ' were lawful contracts, and I see no reason why they cannot stand according to their terms and intention, rejecting only the assurances given for the repayment as simply worthless. This point, I-think, was directly involved and determined in
 
 Curtis
 
 v.
 
 Leavitt
 
 (15 N. Y., 95 99). But the result in this case will be the same, whether we consider the right of Perry to sue as resting on the contract by which he agreed to lend, and the defendant to repay by a specified time, or on a total disaffirmance of the entire transaction between him and the defendant. In the latter aspect, the defendant received his . money and held it, for his use, whenever he chose to demand it.
 
 (Tracy
 
 v.
 
 Tallmadge, supra.)
 

 The next question, therefore, is, whether the right of action to recover the money still remains in Perry, or whether he transferred it to the plaintiff. In either case, the suit, if not maintainable on the drafts, would have to be brought in Perry’s name, according to the principles of the common, law; but, under our code of pleadings and practice, it must be brought in the name of the real party in interest. If, therefore, the dealing between Perry and the plaintiff had the effect to assign his claim, the plaintiff has the same right to maintain an action which Perry had before the dealing took place. The inquiry, then, is, whether the sale and indorsement of the drafts by him to the plaintiff, for a full consideration paid to him, did, or did not, have the effect to transfer all the claim against the defendant which the drafts were intended to represent. I examined this question after the first argument .of the cause, although the counsel on both sides had failed to notice it; and I was of opinion that such was the effect of the indorsement and sale. The question has now been fully argued; and, upon the most careful consideration, I cannot bring my ,-mind to entertain any serious doubt upon the proposition,
 
 -Jíf
 
 the drafts had been
 
 *498
 
 valid instruments, most clearly Perry’s transfer of them would have left in him no pretence of any claim against the defendant’s bank for the money loaned on which they were based. The icjga that the plaintiff could sue on the drafts, and Perry "\for the money, js so absurd that it needs no refutation. j,But the intention and result are no less clear, the securities being void. I think it would be equally absurd to hold that Perry, after indorsing and selling the drafts for full value, retained to himself the right to disaffirm them, and to proceed in his own name and right to recover the consideration for which they had been issued to him. He who sells a security and receives his' pay for it, necessarily sells whatever claim or right the security is understood by the- parties to represent. For example, a note or a bond may be void for usury, but, being founded on some antecedent claim or contract free from that defect, there may be a just and legal right to recover the original consideration. The note or bond may be sold, and it will be void even in the hands of an innocent purchaser. But will it be pretended that the purchaser gets absolutely nothing? It is impossible to doubt that he will stand in the shoes of his vendor. If that be conceded, how can the application of the principle to this case be denied ? I think the result may be reached even by the most technical rules of reasoning. If the drafts had been valid, the plaintiff, as the indorsee, could declare or complain on the money counts against the defendant as the drawer. The instruments would, of themselves, be evidence of money had and received by the drawer to the use of the indorsee. (17 Wend., 206; 16
 
 Id.,
 
 659; 2 Seld., 19; 1 Denio, 105.) How, although they are void, because in a form prohibited by law, so that no action can be maintained upon them, they aré still capable of being used as evidence. They are a written confession that the drawer has received the money or value expressed in them; and, if it be good technical law that the money is deemed to be held for the use of the indorsee of a valid draft, I can see no reason why the principle should not be applied, when the draft itself, for some formal defect, turns out to be worthless.
 

 
 *499
 
 The question we are considering was, in effect, determined by this court in
 
 Tracy
 
 v.
 
 Talmage, supra
 
 (14 N. Y., 192). In that case, the Morris Canal and Banking Company had received, from one of these banking associations, post-notes, which were assumed to be void under the restraining laws, or some other statute of this State. The Morris Company then entered into a written agreement with the State of Indiana to transfer to that State those notes, to the amount of $196,000) and the transfer was made accordingly. The consideration 'on which the. notes had been issued was certain State stocks which the Morris Company had sold to the banking association; and . one of the questions in the case was, whether Indiana was entitled to recover that consideration, the notes being considered void. There was no pretence that, in point of form, anything except the notes had been transferred to the State; yet it was held by this court, and no doubt on the subject was then entertained, that the" State became in equity the assignee of the demand which the notes professed to represent, and, therefore, was entitled to recover the value of the stocks. By way of answer to that authority, and to the principle of equity which it suggests, it has been said, that the proceeding there was strictly in equity, while this is a mere action at law. The reply to this is plain. Bemedies are not now embarrassed by any such distinction. Those who have read the Code of Procedure need hot be informed that the old distinctions between suits at law and in equity are abolished, and that the action must now be brought in the name of the party who has the equita. ble right to the money or thing in controversy. If, therefore, it can be.said that the assignment or sale to the plaintiff of Perry’s demand against the defendant for money lent, or had and received, was defective in respect to the mere forms of transacting the business,-' it is, nevertheless, the duty of the courts to carry the intention into effect. That which ought to have been done, and which a court of equity would compel tof be done, must, upon well settled principles, be regarded as actually done, where the ends of justice require it.
 

 
 *500
 
 We conclude, therefore, that the plaintiff became the assignee of the right, which it has been shown Perry bad, to demand and recover from the defendant the sums loaned by him, unless the objection next to be considered stands in the way of that Conclusion. The drafts were payable in less than sixty-three days from the time when the plaintiff discounted them, that is to say, they were dated some thirty days forward of that time, and they-were payable when the day of their respective dates should arrive. The plaintiff, in discounting them, deducted interest at the rate' of seven per cent per annum. The plaintiff is a banking corporation, subject to the provisions of the so-called “ Safety Fund Act” (Laws of 1829, ch. 94), the 35d section of which declares that, (t on all bills or notes discounted . . or received in the ordinary course of business, which shall become mature in sixty-three days from the time of such discount; the said moneyed corporations shall not take or receive more than at and after the rate of six per cent per annum in advance.” This statute would seem to have been violated by the plaintiff in the discount of these drafts.
 

 But we do not see, in this feature of the case, any valid objection which the defendant can take; and as this point was scarcely insisted upon at the argument, in the view of the case wldeh we have so far taken, but little will need to be said in regard to it. In a case where this statute is violated, and the"transaction is directly between the offending bank and the maker of an obligation so discounted, a question of some diffi-' culty might arise whether the contract can be enforced. If, however, it he conceded that, in such a case, the debtor -can resist an action, whether upon the contract, or in disaffirmance of the contract for the money advanced to him, it by no means follows that any defence of this nature exists in the controversy now before us. When, as in this case, the debt has been created and the security given between other parties, the. debtor 1 is not aggrieved, nor is his obligation in the slightest degree impaired, by a subsequent discount of the security by a bank in violation of the statute. The demand being originally a legal and valid one, it loses no quality when the holder makes
 
 *501
 
 an illegal transfer of it to a bank or to any other party. The debtor being bound to pay it to some one, all that he can claim is protection against liability to pay more than once. Being himself a stranger to the transfer, he has no right to bring forward questions and controversies which might arise between other parties, but in which he has no sort of concern. Thus, if the holder of a valid obligation should pledge or transfer it upon a usurious loan, the debtor could not impeach the title of the transferee in a suit by the latter to enforce it, where it did not appear that the pledge was in any manner disavowed or revoked by the party who made it, and who alone was aggrieved by the usury. (Dix v.
 
 Van
 
 Wyck, 2 Hill, 525;
 
 Reading
 
 v. Weston, 7 Conn., 409;
 
 De Wolf
 
 v. Johnson, 10 Wheat., 368.) In reference to the statute under consideration, it is a restriction upon banks, designed for the protection and benefit of those who borrow money or receive discounts from them. The defendants are not in that relation to the plaintiff. They became indebted to Perry, and they still owe that debt. They certainly have nothing to do with the rate of discount at which he sold the demand to the plaintiff. Perry has not complained, and they have no right to complain.
 

 According to the principles we have laid down, the plaintiff is entitled to recover as the assignee and owner of the demand which Perry had for the moneys advanced by him to the defendant. Viewing the case in this light, the next position of the defendant’s counsel is, that no such cause of action Was set forth in the complaint, or litigated at the trial, or considered by the Supreme Court. These objections will now be examined. The complaint is upon the drafts, and also for money lent and advanced by the plaintiff to the defendant. In setting forth the cause of action on the drafts, they are averred to have been made on the days when they appear to bear date, and to have been then indorsed and negotiated by Perry to the plaintiff These averments are followed by the usual statement of the presentment of the drafts, their non-payment, and notice thereof. The answer specifically denies the allegations of the complaint. It then proceeds to aver that Lynch, the cashier,
 
 *502
 
 made the drafts mentioned in the complaint, without authority from the defendant, and without any consideration received by the defendant. In this connection, it is denied, in substance, that the plaintiff is a
 
 bona fide
 
 holder. For a still further defence, it is stated that the defendant is a banking corporation; that Lynch, the cashier, confederated with Perry to violate the laws against the issue of time bills and notes; that, with this intent, the drafts in the complaint set forth were made before their respective dates, and delivered to Perry without any consideration received from him, and that Perry indorsed them to the plaintiff; and that the plaintiff, in furtherance of the same illegal design, advanced the money upon them, receiving in advance the interest which would accrue before the times when they severally bear date. In respect to the cause of action for money loaned, it is answered, that those moneys were loaned and advanced on the drafts and not otherwise, and that the drafts were made and put in circulation with the illegal intent before specified, and the plaintiff, knowing they were so made and issued, advanced the money in furtherance of the design.
 

 It is true that the complaint does not, in terms, say that Perry lent or advanced money, but it does set forth the issuing and delivery to him of certain drafts. That fact, being taken to be true as stated, it is a legal presumption that the consideration was money. -It would not affect the remedy if, in point of fact,- there was some other sufficient consideration. For remedial purposes, the presumption is conclusive. (2 Seld., 19; 16 Wend., 659; 1 Denio, 107.) It is also true, that the complaint has no averment that the plaintiff became the assignee of the consideration on which the drafts were based; but it does state that the plaintiff became the indorsee and holder; and we have shown, in the preceding discussion, that the. indorsement and sale of the drafts was, in effect, an assignment of whatever debt or demand they were intended to be the evidence of. Undoubtedly, it would have been a more precise description of the actual case if the averments had been, that Perry lent money to the defendant and received therefor certain post-dated drafts which were worthless and void; that he
 
 *503
 
 afterwards sold and indorsed the drafts to the plaintiff for fall value, and thereby made an assignment of the consideration on which they were founded. The pleader doubtless preferred not to concede the invalidity of the instruments, and therefore he made a more general statement of the case. His theory of the law may have been quite different from- ours; but, in all fundamental respects, the facts of the case were truly averred. It is impossible to say that the cause of-action alleged was “unproved in its entire scope and meaning.” (Code, §171-) At the trial, it appeared that the drafts were post-dated, and, therefore (so we have assumed), they were void. But the averments that they were made, and that the original holder indorsed them to the plaintiff for value, were proved to be true as alleged, and these are the essential facts which constitute the claim in controversy, by whatever name we call it. Again, the answer discloses the post-dated character of the instruments, and the sale of them to the plaintiff; and these averments being true, the plaintiff’s title to recover the consideration cannot be denied. It appears to me, therefore, that there was no such defect in the pleadings as prevented an examination of the transactions in question in all their aspects, or the rendition of a judgment on the whole merits of the controversy.
 

 But if it be conceded that our theory of the case might have been resisted at the trial on the ground that the pleadings did not present it, then the further difficulty to be now overcome is, that no such position was taken. On the contrary, it appears that no question whatever was raised upon the sufficiency or insufficiency of the complaint to cover the whole ground of the litigation. At the close of the evidence it was conceded that there was no question of fact, and a verdict was taken for the plaintiff, subject to the opinion of the court on a case. Such was the course of the trial, and the meaning of it was, that the Supreme Court were to give judgment on the verdict, or else for the defendant, as the law should require upon the facts as proved. By this course, which was taken by consent, questions of mere form and variance were waived, and the Supreme Court were asked to declare the law, as they should adjudge it
 
 *504
 
 to be, upon a statement of the controversy to be made for their consideration. If, upon that statement, the plaintiff was entitled to a judgment on the verdict, it could not rightfully be refused, on the ground that the complaint in the case did not allege all the facts necessary to such a judgment; and there is nothing to show that the decision was given upon any such ground.
 

 It may well be true, as we were told on the argument, that the plaintiff’s counsel, both at the trial and in the Supreme Court, failed to urge the particular reasons which, we think, entitled the plaintiff to recover. There is nothing in the record to show that such was the fact, and there is no law or rule of practice which required the points on either side to be stated. Hor is it material whether the.case was well presented to the court below, in the arguments addressed to it. It was the duty of the judges to ascertain and declare the whole law upon the undisputed facts spread before them; and it is our duty now to give such a judgment' as they ought to have given. The amount due to the plaintiff', according to the principles of this opinion, was correctly ascertained by the verdict of the jury ; and we think that, upon the facts proved and contained in the statement returned upon this appeal, judgment should have been given accordingly.
 

 ' The judgment appealed from must, therefore, be reversed, and final judgment for the plaintiff, according to the verdict, must be rendered.
 

 Deitio, J., dissented; all the other judges concurring,
 

 Judgment accordingly.