WAGGENER et al. vs. LYLES et al.

1. JURISDICTION *of probate courts over lost wills.*
   The probate court has no jurisdiction to establish a lost will; and its order establishing and probating the same, and all proceedings had thereunder, are void and may be impeached collaterally.

2. ESTOPPEL: *As to purchaser at a void executor's sale.*
   One who purchases land at a void sale by a person assuming, without authority, to act as executor, and enters and holds possession under the purchase, but not adversely to the heir, is not thereby precluded from resisting the payment of the purchase money.

3. VENDOR AND VENDEE: *Equity of vendee for payments and improvements.*
   Where the purchaser in such a case has paid a part of the purchase money, and made valuable improvements, he is entitled to have the same taken into the account and set off against rents and profits; and if any part of the sum paid has been applied to the payment of debts of the estate, he will, to that extent, be subrogated to the rights of the creditors who were paid out of that fund, and whose claims have been or may be probated, and allowed and classed against the estate.

APPEAL from the *Crittenden* Circuit Court.
Hon. JOHN E. BENNETT, Circuit Judge.
*Randolph and Garland & Nash and Brown,* for appellant.
*O. P. Lyles, contra.*

WALKER, J. In the fall of the year 1863, Elijah Cheek died, leaving a widow and children, and was possessed of a tract of land in Crittenden county, Arkansas, to which valuable ferry privileges were attached. William F. Cheek, one of his sons, who claimed to be the sole executor of his father's estate under a will which had been lost, together with the appellant, John H. Waggener and his wife, who was a daughter of the deceased, and several other of the heirs, at the October term 1865, of the Crittenden circuit court, filed their *ex parte*

petition in chancery, in which they averred that Elijah Cheek, in the first of the year 1862, duly executed his last will and testament, in which petitioner, Wm. F. Cheek, was appointed sole executor; that in July, 1862, he made and published a codicil to said will, and that in the fall of the same year, he also made another codicil; that the original will was placed by the testator in the hands of the executor therein named for safe keeping, and it so remained until after the death of the testator; that the will had been lost from his possession, and that after diligent search he had been unable to find it; that he had found a copy of the will, which was made an exhibit, and which he had proof to establish, concluding with a prayer that proofs might be heard, and the lost will might be established and the codicils probated. At the May term, 1866, the cause was heard upon evidence, without, however, several of the children and grand children of the deceased having been made parties to the petition, and without notice or appearance on their part. The court, in chancery sitting, ordered and decreed that the lost will be established, and, with the two codicils, be held fully probated, and that a copy of the decree and the original codicils be certified to the probate court, which, however, it appears was not done.

After the petition upon which this decree was rendered was filed, and before the same was heard, or any decree rendered thereon, at the January term, 1866, of the probate court of Crittenden county, William F. Cheek, with the written consent of part of the heirs of deceased, filed his *ex parte* petition in said court, in which the same facts were set forth as in his petition in the chancery court, and without having made part of the heirs parties to the petition, and without notice to them or appearance on their part; and thereupon, at the same term of the court, said probate court took jurisdiction of the case, heard the evidence offered to

establish the loss of the will and that it and the codicils had been duly executed; and ordered "that a copy of said last will be declared probated in the place and stead of, and as though it was the original, and that the codicils be also declared probated." And whereupon letters testamentary were granted by said court to William F. Cheek as sole executor of said estate.

It appears that, at a subsequent term of the probate court, an order was made authorizing and empowering the executor to sell the real estate upon specified terms, and at a particular place, which was not observed by the executor, who, without reference to the order of court, and under the authority supposed to be conferred by the will, advertised and sold the lands and ferry privileges at public sale to the appellant, Waggener, for the price of $75,000; of which Waggener paid $10,000 cash in hand, and executed his notes on time to William F. Cheek, as such executor, for the balance of the purchase money; whereupon William F. Cheek, as executor, executed and delivered to Waggener a deed for said land and ferry privileges. The deed purported to convey the entire interest and estate of Elijah Cheek, deceased, in the lands, but without covenants of warranty of title. To secure the payment of the notes so given, Waggener conveyed the land and privileges so purchased, together with a tavern house and lot, a steamboat and one-half of the ferry privileges held by him independently of such purchase, in trust, to defendant Lyles, conditioned that if Waggener failed to pay the notes as they became due, the trustee should sell the property to pay the same. Waggener failed to pay, and the trustee advertised the property for sale. To enjoin which sale and for other relief, Waggener and wife (who was a daughter and heir of Elijah Cheek) filed his bill in the Crittenden circuit court against Lyles, the trustee, and all of the children and heirs at law of

Elijah Cheek. The object and scope of the bill was to set aside the sale of the lands and the ferry privileges, sold by William F. Cheek, as executor, to complainant, and to enjoin the collection of the notes executed for the residue of the purchase money. And for specific grounds for relief, it is alleged that the probate court had no jurisdiction over the subject matter of establishing lost wills; that the orders of court establishing and probating the same were void, and not alone for want of jurisdiction of the subject matter; but, also, because the proceeding was *ex parte*, and without notice to or the appearance of part of the heirs of deceased; and not alone for the reason that the will had never been established or probated, or that there was no legal executor, but that if in fact the will had been probated by a court of competent jurisdiction, still the will itself conferred upon the executor no power to sell the real estate.

As the question of the jurisdiction and power of the probate court to set up and establish a will (if well taken) must necessarily dispose of several others dependent upon it, we will without further reference to the pleading, or after-action of the court below, enter upon its consideration.

The constitution confers upon the legislature the power to declare what shall be the proper subjects of jurisdiction of the probate courts; and the legislature, sec. 10, ch. 180, Gould's Dig., has provided "that courts of probate, or the clerks thereof in vacation, subject to the rejection of the court, shall have the power to take the probate of wills." The nature of the act to be performed under this section is ministerial rather than judicial, and necessarily presupposes the existence of a will presented for proof of its execution. No reference is made therein to lost wills, or the manner of proceeding to set up or establish them; but in an after section such power is expressly conferred upon courts of chancery in the following

language: "Whenever any will shall be lost or destroyed by accident or design, the court of chancery shall have the same power to take proof of the establishment of such will, and to establish the same, as in cases of lost deeds." The power of a court of chancery to establish lost deeds is one long recognized, and the practice under it requires that all those interested in the deed should be made parties, and have notice of such proceeding. Story's Eq. Pl., p. 86. Section 49, ch. 180, Gould's Dig., provides that: "Where a decree in chancery is rendered establishing the will, a copy of the decree shall be recorded in the probate court before which the will might have been probated, if it had not been lost or destroyed, and that letters testamentary or of administration with the will annexed shall be issued by such clerk in the same manner as upon a will duly proven before him." Thus, the filing of the decree of the chancery court, when recorded in the court of probate, confers upon the clerk the power to grant letters executory or of administration with the will annexed, upon such will so established and probated in the chancery court; and after which (but not before), the probate court acquires the same jurisdiction over the administration and settlement of the estate, as it would have had if the original will had not been lost, but had been probated by the clerk or court, and letters testamentary granted therein. Without any consideration of the question as to whether there was or not a valid decree rendered in the chancery court; because, if valid, it was rendered after the probate court had assumed to take jurisdiction of and decide upon the proof necessary to establish the lost will, and of course before any copy was filed, we must hold that the probate court had no jurisdiction of the subject matter, and that the orders establishing and probating the will are void, and the letters testamentary granted to William F. Cheek conferred upon him no power to act as executor, or to sell the

real estate of Elijah Cheek; that complainant Waggener acquired no title by his supposed purchase.

It is contended for the defense that this is a collateral proceeding in which the validity of the proceedings in the probate court cannot be considered or assailed. We do not so consider it. The objection to the validity of the proceedings of the probate court are not that the court has acted in excess of its powers, or that some act necessary to perfect its jurisdiction has not been complied with; but that the subject matter submitted to it was one of which it could take no jurisdiction whatever; and when such is the case, whether in collateral or direct proceedings, the fact being apparent upon the record, such orders and proceedings are treated as nullities. This question may be considered as definitely settled by our own and most of the American courts, and in some instances in cases much resembling this.

In the case of *Sigourney v. Sibley*, 21 Pick., 106, the supreme court of Massachusetts, by SHAW, C. J., who delivered the opinion of the court, said: "It is a general rule that want of jurisdiction cannot be aided by waiver of exceptions, or even by express consent. If it is true in ordinary cases, it is so *a fortiori* in cases of probate decrees granting administration, which bind not only those who happen to be before the court as litigant parties, but all those who, as creditors, heir or otherwise, may be interested." In the case of *Gaines v. New Orleans*, 6 Wall., 642, title was set up under Relf and Chew, executors, in regard to which the supreme court said: "But these letters cannot avail the defendant, because Relf and Chew, as executors under the will, had no authority to make the sale, and could therefore pass no title to the purchaser. If a court act without jurisdiction, the proceeding is void, and this want of jurisdiction may always be set up against a judgment when sought to be enforced, or when any benefit is claimed under it."

It is objected in defense, that as Waggener is still in possession of the land upon which he entered under his purchase, he cannot, thus holding, resist the payment of the purchase money upon the ground of defect of title. This objection, though sound in many cases, does not apply in a case like the present. In this case Waggener has acquired no title whatever — has no covenants to which he may resort for redress.

It is not necessary to consider the validity of the decree in chancery, which set up and established the validity of the will. Because, whether valid or invalid, it in no wise formed the basis of any action of the probate court; and because by an agreement of record, signed by the counsel of both parties, it is admitted and agreed that a suit in chancery has been brought by Stokes and wife (the wife being one of the children of deceased) against the other heirs, to set aside the decree in chancery in the Crittenden circuit court, and as that case may come before us upon a direct issue as to the validity of the will, in which all of the parties in interest will be before the court, we prefer to express no opinion upon that question. Nor is it necessary to express any opinion as to the proper construction of the several clauses of the will, or what power is conferred under it, as no will, as we have held, has been probated and made the basis of action of an executor under it.

Having disposed of the questions of law necessary to a proper disposition of the case, it becomes necessary to look to the situation of the parties in interest, that we may direct the further action of the court below in the settlement of the equities which have arisen since the sale to Waggener.

The widow and all of the heirs and devisees under the supposed will were made parties by Waggener and wife, as well as the defendant Lyles. Some five of the defendants, including the widow, William F. Cheek and Lyles appeared and answered. The rest of the heirs, some of whom were minors,

do not appear to have had service of process; nor did they appear or answer, nor were guardians *ad litem* appointed to represent the minor defendants. No decree *pro confesso* appears to have been taken against any of the defendants who failed to answer.

The complainant very fully brought all of the material facts before the court. He admits that he was let into possession of the lands and ferry privileges after his purchase; avers that he acquired no title whatever by his purchase; that the lands and the rents and profits thereof which accrued after his possession; belong to the estate of Elijah Cheek, deceased; that he does not hold adversely to the other heirs; that after his supposed purchase, he made valuable and lasting improvements on the land, of the value of seven thousand dollars; that he is the sole owner of the steamboat, half owner of the ferry privileges, and owner of the house and lot in his own right; that he is willing and offers to surrender the property purchased, and have an account taken of rents and profits, improvements and advancements; offers to place all of the property in the hands of a receiver to be managed and controlled for the benefit of all parties until the final decision of the cause upon such equitable terms as the court may direct; offers to account for the full value of the one-half of the ferry privileges for the time the same was in his possession, and for all rents and profits to be set off against the ten thousand dollars paid in advance on his purchase, which he alleges was paid over to the creditors of Elijah Cheek; that as to the improvements made by him on the property, he is willing to leave the matter to be settled in a proceeding for partition at a proper time, with a prayer for appropriate relief under the case thus made.

The court restrained the sale of the property by the trustee, and appointed James G. Berry, receiver, who entered into bond and took the required oath to faithfully discharge his

duties as such. Subsequently, Berry reported that, under the power given him by the court, he had sold the steamboat, received part of the money, and taken notes on time for the payment of the balance, together with some other receipts and expenditures; which report was filed. Upon the filing of the answers of several of the defendants, the court, upon motion of defendants, dissolved the injunction, appointed a receiver to take charge of and sell the property, and that the complainants' bill be dismissed, from which an appeal was taken to this court.

Under this state of case, and in view of its further disposition, we order and direct that the case be remanded to the court below with instructions to have the defendants who were not served with process, and who did not appear, brought before the court with day to answer and defend. That a receiver be appointed, who shall enter into a sufficient bond for the faithful discharge of his duties as such, shall receive and take into his possession the property and ferry privileges which belonged to the estate of Elijah Cheek, which have been the subject of litigation in this case, and of the rents and profits that have arisen therefrom, since the time complainant was let into possession under his purchase. That a full account of the rents and profits of the lands and of the value of the permanent improvements and ferry privileges be taken, and of the amount for which the steamboat was sold by Berry, the receiver, which was the individual property of complainant, and also of the ten thousand dollars, and that complainant Waggener have credit for the same; and if it shall be made to appear, as alleged, that said ten thousand dollars, or any part of it, have been applied to the payment of the creditors of said Elijah, that to the extent of such payment complainant be subrogated to all the rights of such creditors, but such subrogation shall only be made to the

rights of such creditors, whose claims have been or shall be probated, allowed and classed by and before the proper court, and that in making up an account against the complainants of the rents and profits of the ferry privileges, he be credited by one-half thereof, the proceeds of the half interest owned by him in the same, and in all other respects according to equity and the practice of the courts not inconsistent with the decision and orders of this court.