## NICHOLS V. SHEARON.

1. NEW TRIAL: *Motion for, filed out of time: Estoppel.*

In an action of ejectment the jury found for the plaintiffs and assessed the excess of rents and profits over taxes and improvements, at $167.50. The defendants on the same day (March 7, 1885) filed a motion for a new trial, but withdrew it in consideration that the plaintiffs waived the damages assessed; and in pursuance of this agreement no judgment for mesne profits was entered. On the 22d of April, being a day of the same term, the defendants refiled their motion for a new trial, without any showing why it was not made earlier, and the court denied it. *Held:* That, there was no error in this, as the motion was not made in time under *Section 5153 of Mansf. Dig.*, which requires such an application, except it be for newly discovered evidence, to be made within three days after verdict or decision, unless unavoidably prevented; and besides the defendants were estopped by the record and their own agreement from reopening the case, there being no fraud on the part of the plaintiffs.

Nichols v. Shearon.

2. PRACTICE: *Equitable defense in ejectment.*

Where the evidence of title produced by the defendant in an action of ejectment, misdescribes the land, he cannot as a mode of defense to that action, proceed by a suit in equity against the plaintiff to have the deed reformed, but should make such equitable matter a ground of defense to the ejectment and move a transfer of any issue thus raised to the equity docket. And after judgment against the defendant in the ejectment suit, his bill in chancery should be dismissed, as the judgment against him could not be annulled or modified by decree in equity. *Mansf. Dig., sec. 4932.*

3. HOMESTEAD: *Sale of, by administrator during minority of children.*

The sale of a homestead for the payment of a deceased person's debts, during the minority of his children, is void; and when an administrator with full knowledge of the homestead right, procures an order for such sale and buys the land from the purchaser, a court of equity may, after the majority of the children, set aside the sale, subrogate the administrator to the rights of creditors whose claims he has paid, and set off his improvements against the rents.

4. ADMINISTRATOR'S SETTLEMENTS: *Allowance for debts paid to wards, of intestate.*

An administrator cannot be credited by payments made on debts which his intestate owed to wards for whom he had been guardian, unless such debts were proved and allowed against the estate like other claims.

5. GUARDIAN AND WARD: *Allowance for maintenance.*

In a suit in equity to set aside a probate sale of land and subsequent conveyance to the administrator, no allowance can be made for expenditures of the administrator as guardian of the plaintiffs, while his wards, for their nurture and education.


APPEAL from *Conway* Circuit Court, in Chancery.
G. S. CUNNINGHAM, Judge.


*Sol F. Clark* and *Sam W. Williams* for appellants.

The jurisdiction of a court of equity cannot be invoked upon mere general charges of fraud without specifying in what the fraud consists. Nor can its jurisdiction be invoked to review the proceedings of a Probate Court in matters which are exclusively within its jurisdiction, except for fraud or mistake.

*45 Ark., 506; 30 id., 66; 33 id., 727; 34 id., 63; 39 id., 256; 40 id., 393; 42 id., 186.*

A court of equity will correct a mistake in the numbers of the land in a deed. *Bisph. Eq., secs. 190, 191.*

Review the administrator's settlements, and contend that there was no fraud. That the claims paid the wards, though not probated, were properly paid by the administrator. The sale of the homestead did not avoid the sale. The homestead was only a right of temporary possession, which was not inconsistent with the title to the land.

The court erred in offsetting the rents against the improvements. It totally ignored the Betterment Act. In no event should more than three years rents have been allowed. *Acts 1883, p. 106, sec. 4; Dunsby v. Beard, 48 Ark.*

When a sale is set aside it is always upon terms that the heirs shall repay the purchase money with interest, and cost of improvements and taxes, with an allowance for waste and an account of rents and profits. *Bisp. Eq., sec. 230 and note 3; 1 Lead. Cas. in Eq. (4 Am. ed.), top p. 257.*

*Ratcliffe & Fletcher* for appellees.

The motion for new trial in the ejectment suit was out of time. *Mansf. Dig., sec. 5153.*

The mistakes were such as essentially affected the *power* to sell and could not be corrected even in equity. *1 Story Eq. Jur., secs. 96, 177, et seq (12 ed.); 2 Ohio, 383–93; 14 Ohio St., 389–94.*

The attempted sale of the homestead was void. *29 Ark., 280; 47 id., 445; Thomp. Home. and Ex., sec. 546; Rorer Jud. Sales, sec. 495; 39 Ohio St., 365; 37 Ark., 316; 42 id., 23.*

Review the acts and settlements of the administrator and contend that they show fraud and conspiracy.

The claims of the wards should have been probated against the estate, the same as other claims.  *33 Ark., 658.*

The judgment in the ejectment suit was *res adjudicata*, and conclusive against the claim in the equity suit.  *46 Ark., 272.*

The claim for raising and educating the children cannot avail in this suit. When a guardian puts himself *in loco parentis*, receives the services of a child, and charges nothing for board, nor keeps any accounts, he cannot afterwards make out an account and charge.  *15 Law Reporter, 25; 10 id., 254; 94 Pa St., 62.*

SMITH, J.   William Carter Shearon died in the year 1863, leaving a widow and two young children.   He was the owner of two parcels of land, each containing one hundred and sixty acres, and upon one of which he resided with his family.   He was also possessed of some personal property; but this was in part destroyed by the soldiery, the civil war being then flagrant and the remainder was consumed in the sustenance of his surviving family.   Administration of his estate was granted in October, 1865, to Samuel H. Nichols, his brother-in-law, and also a creditor.   At January term, 1866, of Conway Probate Court, the administrator obtained an order for the sale of the real estate of his intestate for the payment of debts. The two tracts were sold *in solido* to A. P. Nichols, a brother of the administrator, for $700.   In the course of a year or two, A. P. Nichols conveyed the homestead tract to Samuel H. Nichols, and the remaining tract to William L. Nichols, another brother.   Out of this probate sale have grown three law-suits, which we shall dispose of in one opinion.

1.   Soon after Shearon's children became of age, they brought an action of ejectment for the last mentioned tract against the administrator and heirs of William L. Nichols, claiming by inheritance from their father, who had died seized

and in possession. The defendants set up the title derived
from the administrator's sale and evidenced by the conveyances
of Samuel H. Nichols as administrator to A. P. Nichols, and
of A. P. Nichols to William L. Nichols. The issue was sub-
mitted to a jury, who found for the plaintiffs and assessed the
excess of rents and profits over taxes and improvements at
$167.50. The defendants on the same day (March 7, 1885),
filed a motion for a new trial, but withdrew it in consideration
that the plaintiffs waived the damages assessed. And in pur-
suance of this agreement, no judgment for mesne profits was
entered. On the 22d of April, being a day of the same term,
the defendants refiled their motion for a new trial; but the
court denied it. There was no error in this. April 22d must be
considered as the true date of the motion. Section 5153 of Mans-
field's Digest requires such an application, except it be for newly
discovered evidence, to be made within three days after the
verdict or decision, unless unavoidably prevented. No show-
ing is made why the motion was not made earlier. And, be-
sides, the defendants had, for a consideration of which they
received the benefit, abandoned in open court their right to
insist on their motion. They are estopped by the record and
by their own agreement to reopen the case, there being no effort
to show that they were deceived or misled by any artifice.

2. In the evidence of the title produced by the defendants
in the ejectment suit, there was a misdescription of part of the
land, it being described as in a different township from that in
which it really lay. The error began in the administrator's
petition for license to sell and was continued in the order of
sale and report thereof, and in the subsequent conveyances.
While the ejectment cause was still pending and undetermined
below, the heirs of William L. Nichols filed a bill on the chan-
cery side of the same court, against the plaintiffs in the eject-
ment, seeking amongst other things to correct the mistake and

1. NEW TRIAL:
Motion for,
filed out of time:
Estoppel.

2. PRACTICE:
Equitable de-
fense in eject-
ment.

to reform the deeds.    This bill was dismissed after judgment had been rendered in the action at law.

The bill was confessedly a mere mode of defence to the action of ejectment; its object being to control the proceedings in that case.    But parties cannot litigate about the same subject matter, both at law and in chancery, at one and the same time.    The whole controversy must be brought out in one suit.    A defendant must make all of his defences, of whatsoever nature they may be, in the action in which he is sued. And if some of the issues raised are exclusively or more properly cognizable in another forum, he must move a transfer to the proper docket.    This was the plain course for the heirs of William L. Nichols to pursue.    And as the judgment against them in the ejectment could not be annulled or modified by any decree in the equity suit, except for a defence which had arisen or been discovered since its rendition, nothing remained except to dismiss the bill.    *Mansf. Dig., sec. 4932; Reeve v. Jackson, 46 Ark., 272.*

3. HOMESTEAD:    3.    About the same time that the action of ejectment was
Sale by administrator: begun, the heirs of William Carter Shearon also filed a bill
Subrogation. against Samuel H. Nichols, attacking his sale and conveyance of the other tract, which had belonged to their ancestor, and the subsequent reconveyance thereof by A. P. Nichols to the defendant.    It was alleged that this tract, being the homestead of the deceased, was exempt from sale for the payment of his debts, during the minority of his children.    And it is further alleged that the defendant had fraudulently procured the order for such sale by deceiving the Probate Court as to the extent of the indebtedness of said estate; that he had fraudulently conducted said sale, by omitting to have the lands appraised, although he had reported to the court that the same had been duly appraised; and that he was in fact the purchaser at the sale, although the land was nominally stricken off to his brother, who paid nothing.

The defendant filed an answer and cross-bill, denying the charges of fraud and asserting that the proceedings for the sale of the land were in all respects regular and valid; and that he had no interest in his brother's purchase, although he admitted having afterwards bought the land. He alleges he had placed extensive and beneficial improvements on the land; and that he had taken the plaintiffs, when they were small children, to his house, out of affection and charity, and without any expectation of remuneration; and that he had reared and educated them, at an expense of $1000 in excess of all that their labor had earned for him. And he prayed for compensation for his improvements and reimbursement for his expenditures in behalf of the plaintiffs, if for any cause the sale of the land should be set aside. Proofs were taken, from which it appeared that the Probate Court had confirmed the administrator's sale; that the defendant had gone into possession in 1868, under his purchase from A. P. Nichols, and had since that time enjoyed the rents and profits; and that he had made costly improvements which had enhanced the vendible value of the land not less than $2000, and perhaps as much as $4000. It was also shown that the mother of the plaintiffs having remarried and being very poor, the defendant had, at her request, become their guardian; had brought them up, at considerable cost, as his own children; and had performed an excellent part towards them.

The court decreed that the attempted sale of the homestead was void for want of jurisdiction in the Probate Court to order it; and moreover that it was the result of a fraudulent combination between the defendant and his two brothers. It therefore set aside the defendant's title deeds, but required no account of rents, balancing them against his improvements. It also found that the defendant, during his administration, had expended in payment of taxes, expenses of administration and probated claims $329.15 over and above what he had received

from the personal assets of his intestate; and it charged this sum upon the land. Both parties have appealed.

The sale of the homestead was void. The defendant was aware of all the circumstances which gave the plaintiffs a homestead right in the premises. He must take notice of their right to receive the rents during their nonage and that the land in the meantime is protected from sale for the ancestor's debts. *Booth v. Goodwin, 29 Ark., 633; Altheimer v. Davis, 37 id., 316; McCloy & Trotter v. Arnett, 47 id., 445, and cases there cited; Wehrle v. Wehrle, 39 Ohio St., 365.*

Notwithstanding this right of homestead had terminated before the commencement of the suit, the plaintiffs having attained their majority, yet, there having been no lawful sale, the land had descended to them, subject to the payment of such debts as had been proven against their father's estate. These debts are provided for in the decree by subrogating the administrator, who had paid them, to the equity of the credi-

4. ADMINISTRA-TOR'S SETTLE-MENTS: Payment of debts not probated.

tors. It is true the administrator's settlements and the testimony taken show that he had paid several other debts, which Shearon owed to wards for whom he had been guardian in his lifetime. These payments were doubtless made in good faith; but the administrator had no right to pay them, as they were never proved up against the estate. The administrator seems to have acted upon the idea that the debts were incurred in a fiduciary capacity and that this dispensed with the necessity of their being regularly probated. Shearon was a trustee for his wards as long as he lived. But when he died his indebtedness to the trust became a simple demand against his estate, which required to be sworn to, to be presented to the administrator within two years from the date of his letters, to be allowed, classified and paid like any other debt he owed. *Hill v. State, 23 Ark., 604; Connelly v. Weatherby, 33 id., 658; Patterson v. McCann, 39 id., 577; Purcelly v. Carter, 45 id., 299; Padgett v. State, id., 495.*

We think, also, substantial justice has been done in setting off all improvements against all rents. No allowance can be made in this suit for the expenditures of the guardian in the nurture and education of his wards. That is a matter which belongs exclusively to the Probate Court, and does not affect the merits of the present controversy.

5. GUARDIAN
AND WARD:
Allowance
for mainte-
nance.

The judgment in the ejectment suit; the decree dismissing the bill filed by the heirs of William L. Nichols, and the decree in the case of Shearon's heirs against Samuel H. Nichols are, severally, in all things affirmed.