## BOND *v.* MONTGOMERY.

### Opinion delivered November 12, 1892.

1. *Homestead—Probate sale.*

   Under the Constitution of 1874, as well as that of 1868, the probate court had no jurisdiction to order the sale of the homestead of a decedent for the payment of his debts subject to the rights therein of his widow and minor children.

2. *Void probate sale—Subrogation.*

   One who purchases the homestead of a decedent at a void probate sale for the payment of debts, under the belief that he is acquiring title, will be subrogated to the rights of the creditors to the payment of whose claims the purchase money was appropriated.    The maxim of *caveat emptor* applies where there is a failure of title at a probate sale because of a want of ownership of the property in the testator or intestate, but not to a defect in the title of the purchaser occasioned by a failure of the sale to pass the title of the testator or intestate.

3. *Illegal probate sale—When purchaser not* in pari delicto.

Under the act of April 25, 1873, which provides that any adminis-
trator or executor who shall undertake to sell the homestead of
a deceased person after it has been selected by the widow or
minor children shall be guilty of a misdemeanor, one who pur-
chases the homestead of a deceased person at an administra-
tor's sale after it has been selected by the widow is not by
reason thereof *in pari delicto* with the administrator, is guilty
of no immoral or criminal act, and is entitled to be subrogated
to the rights against the estate which were held by the credi-
tors whose claims his money has paid.

4. *Purchaser not an accomplice.*

The mere fact that the purchaser at such administrator's sale
assisted in making an appraisement of the homestead, at the
request of the administrator, did not make him an accomplice
in the administrator's misdemeanor, since there is no presump-
tion that he advised or encouraged the administrator to make
the sale.

5. *Subrogation—Parties.*

In a suit by the purchaser at a void administrator's sale to be-
subrogated to the rights of the creditors whose claims were dis-
charged by the purchase money, the complaint should allege
the names of the creditors whose claims were discharged, and.
should make such creditors parties defendant.

Appeal from Monroe Circuit Court in Chancery.

GRANT GREEN, JR., Judge.

STATEMENT BY THE COURT.

On the 7th of January, 1890, appellants filed in the
Monroe circuit court a petition, alleging therein that
Robert E. Bond died on the 14th of December, 1872,.
intestate, leaving appellant, Nancy J. Bond, his widow,
and the other appellants, some of whom were his children,
his heirs, surviving; that he owned and occupied, at the
time of his death, the northwest quarter of section twenty-
seven in township one south, and range two west, in.
Monroe county, in this State, as a homestead; that J. T.
Oates and his widow, Nancy J. Bond, were respectively
appointed administrator and administratrix of his estate,
and qualified as such, and took upon themselves the

burthen of its administration ; that, thereafter, Nancy J.
filed an application in the office of the clerk of Monroe
county, in which she described the tract of land mentioned
above, and claimed the same as a homestead, and asked
that it be reserved from sale ; that the clerk entered upon
the record of the court an order that it was so reserved,
on her application ; and that, afterwards, J. T. Oates, as
administrator, procured from the Monroe probate court
an order directing him to sell the land so reserved, sub-
ject to the homestead, for the purpose of paying the
claims probated against the estate, and, on the 9th of
June, 1883, sold it at public auction, subject to the home-
stead, to Polk Montgomery for $505, it being two-thirds
of the appraised value thereof, and, the purchase money
having been paid, conveyed it to him, in the same manner,
on the 5th of May, 1884 ; and that, when it was set
apart as a homestead, all the children were minors, and
three of them did not arrive of age until after the sale,
and Nancy J. is still the widow of the deceased.   The
prayer of the petition was that the application, and all
other papers on file, and the orders of the probate court
in respect to the sale of the land, be certified to the circuit
court, and that the order and sale be set aside and de-
clared void.

Montgomery, the purchaser, appeared and answered,
admitting the allegations of the petition to be true, and
averring that, at the time the land was ordered to be sold,
the claims which were probated against the estate of
Bond and remained unpaid amounted to the sum of
$957.01, and that the lands were sold to pay these claims ;
and asked that the cause be transferred to the equity
docket, and that he be subrogated to the rights of the
creditors of the deceased.

Appellants filed a demurrer to the answer, and the
court overruled it and transferred the cause to the equity
docket, and, appellants electing to stand upon their

demurrer, ordered, adjudged and decreed that Montgomery be subrogated to the rights of the creditors.

*Price & Parker* for appellants.

1.   The creditors were not parties, nor was the administrator; hence appellee must comply with Mansf. Digest, sec. 5023.   43 Ark. 469; 32 *id.* 289; 31 *id*, 360–4; *ib.* 203.

2.   The sale was void.   47 Ark. 445; 50 *id.* 329.

3.   The appraisement was void.   55 Ark. 268.

4.   Appellee was not entitled to subrogation.   He did not pay the whole debt.   5 Wait's Ac. and Def. 213; 7 Atl. Rep, 788; 5 Atl. Rep. 877.

5.   The sale being void, no rights grew out of it. Rorer, Jud. Sales, sec. 4; 39 Ark. 571.   Appellee was a mere wrong-doer—a volunteer.   1 N. E. Rep. 485; 124 U. S. 534; 120 *id.* 287; 3 N. E. Rep. 753; 11 Atl. Rep. 122; 14 N. W. Rep. 331; 93 Am. Dec. 783 and note.

6.   Appellee violated the criminal law in buying the homestead.   Acts 1873, page 247, sec. 9; Gantt's Digest, sec. 3162.   All sales made in violation of criminal law are against public policy and void.   Greenwood on Pub. Pol. 580 to 586; Bish. on Cont. secs. 467 to 549.

7.   Money paid voluntarily with full knowledge of all the facts, or under a mistake of law, does not entitle one to subrogation.   See Harris on Sub. 130; 7 N. E. Rep. 52; 44 Ark. 271; 50 *id.* 314; 10 Peters, 137; 23 Am. Dec. 773; 53 Ark. 130; Wait's Ac. and Def. vol. 1, p. 84, sec. 2, and vol. 4, p. 486, sec. 12; 13 Wall. 517.

*Sanders & Watkins* for appellee.

1.   By paying the $500 to the administrator under the sale authorized by the probate court, which was paid to the creditors of the estate, the appellee was subrogated to the rights of the creditors.   Sheldon on Subrogation, sec. 35; 10 Gill & Johnson (Md.), 65; Woerner, Am. Law of Adm. vol. 2, page 1071; 108 Ind. 579; 64 Miss. 555; 29 Ark. 47.   See also 53 Ark. 545; 52 *id.* 499.

2. The creditors were not necessary parties. 41 Fed. Rep. 614.

BATTLE, J., after stating the facts as above reported.

Under the Constitutions of 1868 and 1874, the probate court had and has no jurisdiction to order the sale of a homestead of a deceased person for the payment of his debts, during the minority of his children, or so long as his widow remains unmarried, or does not abandon it, or shall not be the owner of a homestead in her own right. During this time the homestead is exempt from sale for the payment of the debts of the deceased owner. The order of sale in this case was, therefore, an absolute nullity. *McCloy & Trotter* v. *Arnett*, 47 Ark. 445; *Nichols* v. *Shearon*, 49 Ark. 75; *Stayton* v. *Halpern*, 50 Ark. 329.

*1. When probate sale of homestead void.*

The circuit court and the parties treated the answer of appellee as a cross-complaint. Appellee offered no resistance to the prayer of appellant's petition, but conceded all they asked. All he asked was to be subrogated to the rights of the creditors of the estate of Robert E. Bond, deceased. Is he entitled to be subrogated to such rights? is the principal question presented for our decision.

Upon the right of purchasers at void execution or judicial sales to subrogation to the rights of creditors to the payment of whose claims the purchase money paid by them has been appropriated, courts are not agreed. Many consider them as volunteers acting without compulsion and for no purpose of protecting any interest of their own, and under a mistake of law, and therefore not entitled to the protection of courts of equity. On the other hand, others hold that the doctrine of subrogation rests upon the natural principles of equity and justice; that purchasers at such sales who are entitled to the benefit of subrogation are not volunteers; that they purchase at a sale made under the coercive process of law,

*2. Purchaser at such sale subrogated to creditor's rights.*

under the honest belief that they are getting the property sold, and their money is actually applied to the benefit of the owner in paying his debts or removing charges or liens upon his property ; and that it would be in the highest degree inequitable and against good conscience to permit the owners, the administrators or creditors, as the case may be, to hold or enjoy at the same time the benefit of the property sold and the money of the purchaser without recompense, and that, in order to prevent this injustice and wrong, they should be subrogated to the rights of the creditors, or to the benefit of the liens or charges, to the payment of whom or which their money has been applied. According to the latter view, it is the belief of the purchaser that he is getting the property sold, and the actual application of the money to the benefit of the owner in paying his debts in removing a charge or lien on his estate, which constitute the equity. There is no conflict between this view and the maxim of *caveat emptor.* That maxim applies where there is a failure of title, " because of a want of ownership in the property by the defendant in the execution or in the intestate," or testator, " but it does not apply to the defects in the title of the purchaser occasioned by a failure of the sale to pass the title of the defendant's intestate," or testator. The latter view has been adopted by this court, and is sustained by the decided preponderance of authority. *Waggener* v. *Lyles,* 29 Ark. 47 ; *Nichols* v. *Shearon,* 49 Ark. 75 ; *Meher* v. *Cole,* 50 Ark. 361 ; *McGee* v. *Wallis,* 57 Miss. 638 ; *McLaughlin* v. *Daniel,* 8 Dana, 182 ; *Bright* v. *Boyd,* 1 Story, 478 ; S. C. 2 Story, 605 ; *Scott* v. *Dunn,* 1 Dev. and Bat. Eq. 425 ; *Valle's Heirs* v. *Fleming's Heirs,* 29 Mo. 164 ; *Blodgett* v. *Hitt,* 29 Wis. 182 ; *Hatcher* v. *Briggs,* 6 Oregon, 31 ; *Short* v. *Porter,* 44 Miss. 533, 538 ; *Crippen* v. *Chappel,* 35 Kas. 495 ; S. C. 57 Am. Rep. 187 ; *Levy* v. *Martin,* 48 Wis.

198; Freeman on Void Judicial Sales, secs. 51-54, and cases cited.

But it is said that the administrator committed a misdemeanor by undertaking to sell the homestead, and that the appellee was a *particeps criminis*, and is not entitled to be subrogated to the rights of creditors. To sustain this contention an Act of the General Assembly, numbered 105 and approved April 25, 1873, is relied on. Section 1 of that act provides that whenever any resident of this State shall die leaving a widow or children who may desire to claim the benefit of the homestead of the deceased, she or they, as the case may be, shall file, with the clerk of the probate court of the county in which the homestead is situated, an accurate description of the land so claimed, and apply to have the same reserved from sale; and section 2 provides that it shall be the duty of the clerk, immediately after the filing of the application, to enter upon the records of said court that said homestead has been duly reserved from sale upon the application of such claimant or claimants. Section 9 then provides that when these sections have been complied with by the parties claimant, "any administrator or executor of the estate of the deceased who shall assume the possession of, or in any manner disturb the widow or children of the deceased in the enjoyment of said homestead, or undertake to sell the same, shall be guilty of a high misdemeanor, and shall, upon conviction, be imprisoned in the county jail for a term not less than one nor more than two months, and shall be fined in any sum not less than one hundred nor more than five hundred dollars." The first two sections are in Mansfield's Digest, but the ninth is omitted. Finding no constitutional provision or statute repealing any of them, we think that all of them are still in force. This being true, is appellee entitled to be subrogated to the rights

3. Purchaser at such sale not *particeps criminis*.

of creditors who have received the purchase money, to the extent that they have thereby been paid?

Appellants insist that he is not, and cites *Martin* v. *Hodge*, 47 Ark. 378, 383, to support their contention. In that case, this court, using the language of Lord Mansfield in *Holman* v. *Johnson*, 1 Cowp. 341, said: "No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, there the court says he has no right to be assisted." In that case the court laid down the rule in cases when the principal party to the immoral or illegal act, or offense, seeks relief. That case was an action of replevin, in which the defendant sought to prevent a recovery by the plaintiff because he had violated the statute making it criminal to sell lottery tickets in this State, and because the defendant, as he contended, had come into the possession of the property in controversy by reason of such violation. The court did not undertake, in that action, to lay down any rule to determine in all cases when a party to an illegal or immoral act can recover in an action brought in disaffirmance of such acts. In that case the court said: "The test to determine whether a plaintiff is entitled to recover *in an action like this* or not, is his ability to establish his case without any aid from an illegal transaction." The facts, the authorities cited, and the language of the court in that case, clearly show that it only undertook to define the rule governing such cases, and no others.

The rule as stated in *Martin* v. *Hodge* is correct; that is to say, whenever a contract or other transaction is illegal, and the parties thereto are, in contemplation of law, *in pari delicto*, courts will not aid either party, by enforcing or setting aside the contract or obligation

while it is executory, or by enabling him to recover the
title to property which he has parted with by its means.
But "where a contract otherwise unobjectionable is pro-
hibited by a statute which imposes a penalty upon one
of the parties only, the other party is not *in pari delicto*,
and, upon disaffirming the contract, may recover, as upon
an implied assumpsit, against the party upon whom the
penalty is imposed, for any money or property which has
been advanced upon such contract." This is not only
consonant to principles of sound policy and justice, but
is sustained by the authorities. *Curtis* v. *Leavitt*, 15 N.
Y. 9; *Tracy* v. *Talmage*, 14 N. Y. 162, 181; *Oneida
Bank* v. *Ontario Bank*, 21 N. Y. 490; *White* v. *Frank-
lin Bank*, 22 Pick. 181, 186, 188; *Lowell* v. *Boston &
Lowell R. Co.* 23 Pick. 24, 31, 32; *Walan* v. *Kerby*, 99
Mass. 1; *Thomas* v. *City of Richmond*, 12 Wall. 349;
*Parkersburg* v. *Brown*, 106 U. S. 487, 503; *Prescott* v.
*Norris*, 32 N. H. 101; *Lester* v. *Howard Bank*, 33 Md.
558; Pomeroy's Eq. Jur. sec. 403 and cases cited; Bishop
on Contracts (ed. of 1887), secs. 627, 628, and cases cited.

The Oneida Bank v. The Ontario Bank, 21 N. Y.
490, is a fair illustration of the latter rule and its reason.
In that case a statute of New York declared that "no
banking association or individual banker, as such, shall
issue, or put in circulation, any bill or note of such
association or individual banker unless the same shall be
made payable on demand, and without interest," and that
every violation of the statute by any officer or member of
a banking association, or by any individual banker, shall
be deemed and adjudged a misdemeanor, punishable by
fine or imprisonment or both, in the discretion of the
court having cognizance thereof. Drafts were issued by
a bank to one Perry for money advanced, in violation of
this statute. The question in the case was : Could Perry,
who dealt with the bank, and took from it the drafts
which the statute prohibited, reject the drafts, they be-

ing void, and recover the money or value which he advanced on receiving them? The court held that he could. Chief Justice Comstock, speaking for the court, said: "The argument for the defendant against this position rests wholly on the idea that Perry, in receiving the post-dated drafts, was as much a public offender as the bank or its officers issuing them. * * * But such were not the relations of both the parties to these transactions. Whatever there was of guilt in the issuing of the drafts, it was the creature of the statute. There is no rule of ethics or principle of the common law, against the issue of time obligations by banks or bankers. The offense is therefore precisely of the nature, form and proportions which the legislature have declared. By that authority, and that alone, the bank is prohibited from issuing, but not the dealer from receiving; and the punishment is denounced solely against the individual banker, or the officers, agents and members of the association. The same power which created the offense has designated the criminal parties. * * * If the issuing of the drafts was prohibited, and if they were also void, Perry nevertheless had a right to demand and recover the sums of money which he actually loaned to the defendant."

A further review of the authorities is unnecessary. They are sufficiently examined in the cases cited above. Whatever doubt may have been entertained as to the latter rule, it is now well settled by authority.

The act of April 25, 1873, does not make the buying or offering to buy the homestead of a deceased person, at an administrator's or executor's sale, after it has been selected by the widow or minor children and reserved for sale, a criminal offense. The administrator or executor attempting to sell is alone subject to the penalty. He alone is declared to be the criminal by the statute creating the offense. The person assuming to be the purchaser at the pretended sale is guilty of no criminal

or immoral act, and has not violated the act ; and stands as though the effort to sell was not criminal in any respect ; and is, therefore, according to *Nichols* v. *Shearon*, 49 Ark. 75, and cases cited above, entitled to be subrogated to the rights against the estate which were held by the creditors whose claims his money has paid.

It is suggested that appellee is not entitled to subrogation because he aided the administrator in making the sale by appraising the homestead, and thereby became an accomplice in the commission of a misdemeanor. To make him an accomplice he must have assisted in the appraisement with the intent to encourage or induce the administrator to make the sale. The mere appraisement did not operate to make him an accessory to the misdemeanor committed by the administrator in undertaking to sell the homestead. The statute under which the appraisement was made provided that "before any executor or administrator should sell any lands and tenements, or any interest therein, by the order of the court, he shall have such lands and tenements appraised by three *disinterested* householders of the county in which the lands and tenements are situated." Such appraisers should be selected because they are not interested in the sale. The presumption is, the administrator endeavors to do his duty in the selection of them. When he selects them he has fully determined to make the sale ; the order for that purpose is already made. The presumption is, he selects them because they are disinterested, and that they make the appraisement in the performance of a duty, with no intent to advise or encourage the administrator to sell or desire to control his subsequent action, and without regard to the course he may thereafter pursue in regard to the sale, they being disinterested. There is no occasion for them to appraise, if their object is to advise and encourage, as they can do so

4. Apprais-er at such sale not an accomplice.

just as effectually by other means. There is no necessary connection between the two acts.

As it does not appear that appellee was, criminally, an accomplice in the effort to make the sale, it is unnecessary to consider what would have been his rights in respect to subrogation, if he had been such an accomplice.

But it nowhere appears that the purchase money paid by appellee was appropriated to the payment of the creditors. This being true, he was not entitled to subrogation; and the court erred in overruling appellant's demurrer to his answer or cross-complaint.

5. Parties to suit for subrogation. Appellee also failed to make the creditors, to whose rights he seeks to be subrogated, parties defendant to his cross-complaint. Such creditors were indispensable parties, and should have been made defendants. *Kyner* v. *Kyner*, 6 Watts, 227. Their rights were involved, and they had a right to defend them. As they were not made parties, we will not undertake to decide what the rights of appellee as to them are, under the peculiar facts of this case.

For the errors indicated the decree of the circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.