The Chief Justice

delivered the Opinion of the Court.
This case has grown out of the case of Whiting’s Heirs vs. Taylor’s Heirs, decided by this Court, at its spring term, 1839, and reported in 8th Dana.
In that case, after deciding that Whiting’s Heirs were *400 entitled to the surrender of a large tract of land, this Court remanded the case, with instructions to ascertain rents and improvements, respecting which, the opinion then rendered contains the following suggestions:—
“The complainants (Whiting’s Heirs,) are entitled to “an account of the rents and profits, subject to all equi-“ table deductions; and, although they cannot, against ‘ ‘ the plea of the statute of limitations, recover rents for ‘£ more than five years before the commencement of this “suit, they are entitled to set off the rents and profits for “previous years, and of the whole period as far as may ‘ ‘ be necessary, against any claim which the defendants, “or any of them, may have, in equity, to he compensated “for ameliorations to the land, andio improvements made “upon it in good faith.”
On the return of the case to the Court below, the Chancellor directed commissioners to ascertain the value of rents and improvements, from 1807, when Taylor took possession of the land, to 1827, which was five years before the commencement of the suit, and the rents and improvements from 1827 to 1832, when this suit was instituted, arid also the rents alone from 1832 to the date of the report to be made by the commissioners.
The commissioners reported that they had imated the improvements made prior to 1832, as reasonably worth the aggregate sum of $7402 81; and had ascertained the rents from 1807 to 1827, to be worth $4780; from 1827 to 1832, $2800, and from 1832 to 1839, $5247 50.
That report, though excepted to by the defendants in the suit, was approved; and thereupon, the Chancellor^ having set off the rents accruing since 1827, against the improvements, whereby a balance of $644 69 was left in favor of the complainants, decreed the payment of that balance, and then said: “ The improvements so valued “by the commissioners, being so extinguished and satis-“ fied by the rents commencing for five years next prece-“ ding the suit and down to this time, for which the defendants are accountable, there is no necessity to resort “to the preceding years for an account; and as to all the “ other years, the defendants are protected by the limita *401 “tion, according to the principles laid down in the opin-“ion and decree of the Court of Appeals.”
Both parties complain of that decree. The defendants in the suit prosecute a writ of error, and the complainants have assigned cross errors.
We perceive no sufficient objection to the report of the commissioners ; and therefore, the plaintiffs in error have, so far, no cause for just complaint.
But the Chancellor may have erred to their prejudice, in not directing or allowing an assessment of ameliorations since the commencement of the suit.
Though the plaintiffs in error are certainly not equitably entitled to be reimbursed the value of improvements made since they were sued for the land, yet so far as, by the expenditure of their labor or money, they may, with no bad faith in fact, have enhanced the value of the land to the defendants in error, they are, according to the principles of the civil law and of our equitable jurisprudence, clearly entitled to compensation; for it is a plain and universal principle of equity, that “one man shall not be enriched at the expense of another.” So far, therefore, as there may have been such an amelioration of the land, in consequence of improvements made pendente lite, the plaintiffs in error are entitled to compensation. And this deduction is not inconsistent with, but is clearly intimated by, the mandate of this Court, which discriminates between improvements and ameliorations; and shows not only that the plaintiffs in error are erititled to the value of “improvements made in good faith,” but also that they have an equitable right “to be compensated for ameliorations.”
By “improvements made in good faith,” the Chancellor properly understood this Court to mean improvements, as such, made before the commencement of the suit for the land, because, in judgment of law, improvements afterwards made were not made bona fide, and therefore he rightly restricted the assessment of improvements to such as had been made before the year 1832. But still, consistently with the former opinion and mandate of this Court, he ought also to have directed the commissioners to ascertain the value of ameliorations result *402 ing from improvements made during the pendency of the suit, and which, whether made in technical good faith or not, if made in good faith in fact,—the defendants in error have no right in conscience to enjoy without an equivalent retribution. In this respect, therefore, there was error. But whether that error was prejudicial to the plaintiffs in error, cannot now certainly appear, because we have no means of determining whether any ameliorations that might be assessed, would be equal to the rents prior to 1827, for which the Chancellor erroneously refused to make any allowance,
Upon the cross assignment, we are, as just intimated, of the opinion that there was error in not setting off the rents which had accrued between 1807 and 1827, against the improvements, Such a set-off was intended by this Court, and was, we think, clearly directed in the mandate, in which it was said that the defendants in error had a right to set off those rents, (and those also of the whole succeeding period, as far as it may be necessary, ) against improvements and ameliorations. This Court meant, of course, that the rents accruing before 1827, though barred, and because they were barred, by the plea of the statute of limitations, should be first set off against any claim for improvements and ameliorations; and that then, if necessary, and so far as necessary, to extinguish the claim for improvements &c., the rents not barred should be also set off against it. And surely this is clearly equitable, and perfectly consistent with the uniform practice of courts of equity. Indeed, most of the improvements were probably made between 1807 and 1827, and were paid for in the accruing rents and profits during the same time; and it appears in fact, that Taylor, during the first portion of that period procured the clearing of the land and some other improvements, by giving to his tenants the use of the land, and that thus, improvements were, so far, actually paid for by rents. Why then should there be a recovery for all the improvements, and no allowance be made by set-off or otherwise, of any rent accruing before 1827.
To the extent of these profits when received, improvements then made, were in fact paid for, when they were *403 made; and, so far as there may have been an excess of profits over such improvements, subsequent improvements were paid for before they were made. The assumption by the Chancellor, that there was “no necessity” to set off any of those profits against the improvements, was altogether authorized only by his erroneous inversion of the equitable and prescribed order of setting off profits against improvements.
We are, therefore, clearly of the opinion, that the Chancellor erred in not decreeing that the assessed value of rents before 1827, (to wit $4780,) should be set off against the assessed value, (to wit $7402 81,) of improvements; and that the balance only, (to wit $2622 81) should be set off against the assessed value of the profits since 1827; whereby, a balance would have remained in favor of the defendants in error, amounting to $5424 69, instead of $644 69, as actually decreed.
Wherefore, the Chancellor’s last decree is reversed, at the instance of each party; and the cause again remanded for such further proceedings and decree as shall be proper according to the former mandate and the foregoing opinion.