# IN THE MATTER OF THE ESTATE OF ALBERT BUSSE.

HOMESTEAD—WHEN NOT SUBJECT TO ADMINISTRATION.—Under the provisions of section one hundred and twenty-one of the Probate Act, as amended in 1866, the widow, (where there are no minor children,) or a minor child or children of the deceased are entitled to have a homestead set apart by the Probate Court for her or their use, even though such homestead had not been occupied by the deceased, or selected and recorded as a homestead by him before his death. Such homestead, when thus set apart, is not subject to administration.

APPEAL from the Probate Court, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Sharpstein & Hastings*, for Appellant.

From reading section one hundred and twenty-one of the Probate Act, as amended in 1865, the Court will perceive that where there *is* a homestead at the time of the husband's death, the Probate Court may set apart for the use of the widow such a homestead at once, without further inquiry,

But where no homestead has been so designated, or dedicated, or recorded, the Court shall proceed " as provided by section one hundred and twenty-four of this (Probate) Act."

The question, then, upon which this whole controversy depends is this—what are the provisions of section one hundred and twenty-four? What are the conditions and limitations of said section? For plainly the Probate Court is referred to this section for all authority whatever to act in the premises. Without this enactment of the Legislature, allowing the Probate Court in this class of cases to create a homestead, the Probate Court in this class of cases would be utterly without power to create any homestead at all. It would only have the power to set apart a homestead that had been made such in the lifetime of the husband. At the very threshold lies the provision that if no law is in force in the State of California exempting property from execution, then and then only may the Probate Court set apart a homestead where none has been made during the lifetime of the husband. That in this State there is a law exempting property from execution, is well known to the Court. (2 Hittell's Dig., Art. 5,158, Sec. 219.)

Section one hundred and twenty-one, amended by the statutes of 1865–6, (pp. 850, 851,) refers the whole matter to section one hundred and twenty-four, and declares that the homestead shall be set apart as provided therein. Is not this one of the provisions of section one hundred and twenty-four? Is it not the controlling provision therein? And if this property is set apart as a homestead for this widow, is it not perfectly clear that it will not be set apart in conformity to the provisions of section one hundred and twenty-four, but in direct contradiction of those provisions?

In conclusion of this part of our argument, we submit that so long as there is in force in the State a law exempting property from execution, the Probate Court, under section one hundred and twenty-four of the fifth Chapter of the Probate Act, cannot set apart for the use of the widow: First—A single spinning wheel, weaving loom, or stove.

Second—Nor the family Bible, family pictures, nor any school books. Third—Nor any sheep, cows, swine, nor any necessary food for them. Fourth—Nor any necessary apparel, household goods, furniture, or utensils. Fifth— *Nor a homestead*, whether in country or city. That very much may be done under the laws exempting property from execution, and under the general Homestead Law, we cheerfully admit, but .these are not in question here. What can be done under them, cannot be done under section one hundred and twenty-four of the Probate Act; and with that section and that Act, we have, in the case at bar, alone to deal.

*A. J. Gunnison*, for Respondent.

By the Court, SAWYER, C. J.:

On the 16th of July, 1867, Albert Busse died intestate, leaving surviving him Jane Busse, his widow, and David E. Busse, his brother. There were no children, and the estate is to be divided between said widow and brother. He owned real estate in San Francisco, but had not resided on it, nor had any portion of it, during his lifetime, been set apart, or dedicated as a homestead under the statute relating to homesteads. After his death, on the petition of the said widow, the Probate Court, assuming to act under the provisions of section one hundred twenty-one of the Probate Act, as amended in 1866, and against the objection of the said brother, set apart for her sole use as a homestead, a lot, with the building thereon, which had been recently built for a residence, and completed the day before intestate's death, of the value of four thousand five hundred dollars. The brother appeals. He claims that there is no power vested in the Probate Court to set aside property as a homestead for the benefit of the widow, where no homestead has been in any manner created, made, dedicated or recorded by the

deceased in his lifetime, while there is in force a law exempting property from sale under execution.

Section one hundred twenty-one, as amended in 1865, reads as follows: "Upon the return ·of the inventory, or at any subsequent time during the administration, the Court, or Probate Judge, may, of his own motion, or on application, set apart for the use of the family of the deceased all personal property which is by law exempt from execution, and the homestead, as designated by the general Homestead Law, or if no homestead has been designated, then one shall be set apart as provided by section one hundred twenty-four of this Act, whether the same has been recorded as such or not," etc. (Stats. 1865-6, p. 851.)

Section one hundred twenty-four, referred to, provides: "If there is no law in force exempting property from execution, the following shall be set apart for the use of the widow or minor child, or children, and shall not be subject to administration: First—All spinning wheels, etc. * * * Second—The family Bible, etc. * * * Fifth—The homestead, consisting of any quantity of land not exceeding twenty acres, and the dwelling house thereon, with its appurtenances, not being included in any incorporated town or city; or instead thereof, a quantity of land not exceeding one lot in any corporated town or city, and the dwelling house thereon, and its appurtenances, to be selected by the widow, or if there be no widow, to be designated by the Probate Judge, and not to exceed in any case more than five thousand dollars in value." (Stats. 1851, p. 463, Sec. 124.)

It is claimed by appellant that the words "then one shall be set apart as provided by section one hundred twenty-four of the Act" are limited by the first clause of section one hundred twenty-four, as well as by the fifth subdivision; that is to say, that said provision of section one hundred twenty-one, as amended, is to be read as follows: "If there is no law in force exempting property from execution," there shall be set apart for the use of the family "the

homestead consisting of a quantity of land not exceeding twenty arces, and the dwelling house thereon, with its appurtenances," etc.   This is clearly not the construction intended. To give it this construction would be but repeating the provisions of section one hundred twenty-four upon the subject.   It cannot be that the Legislature would amend an Act for the purpose of providing, by reference to another section, for the case already provided for in the section referred to. Nothing could be accomplished by such an amendment.   It would, in effect be providing for the same thing in two different sections.   Section one hundred twenty-one, as amended, expressly recognizes the fact, that there are laws in force exempting property from execution, for it provides that there shall be set apart "all personal property which is by law exempt from execution, and" (that is to say, in addition,) "the homestead as designated by the general Homestead Law;" and further, "if no homestead has been so designated, then one shall be set apart as provided by section one hundred twenty-four of this Act, whether the same has been recorded and dedicated as such or not."   There can be no doubt, that, under this provision, the homestead, if one has been dedicated, is, in addition to the property, exempt. And there is as little doubt, that, in case none has been dedicated, one shall still be set apart, for the statute expressly says that it shall be done, "whether the same has been recorded and dedicated as such or not."   The words, "as provided in section one hundred twenty-four" evidently do not mean upon the contingency in the first clause of the section mentioned, but they refer to the fifth subdivision, and mean as there provided with reference to the character, quantity, value, etc., of the land to be set apart.   No other reasonable construction can be given to the amendatory section.   The form of the provision is somewhat awkward.   This is one of the ordinary results of attempts to amend single sections of an Act, without expressing in the amendment itself all that is intended otherwise than by referring to something else.   As originally adopted in 1851, the Act was homogene-

ous and consistent. There was some unity of design mani-
fested in its provisions. There were but two categories
provided for, when there was a law in force exempting prop-
erty from sale on execution, and when there was no such law
in force. In the former case, when there was such a law in
force, section one hundred twenty-one provided that the
property so exempt should be set apart for the widow or
minor children, on the death of the husband or father, and
this was all there was of it. In the latter case, when there
was no such exemption law in force, section one hundred
twenty-four enumerated the property which should be set
apart. This was plain and simple. There was no diffi-
culty or obscurity about it. But under these sections, as
they then stood, the Probate Court was only authorized to
set off the homestead, if there was no law in force exempt-
ing property from execution. There was such a law adopted,
and consequently the one hundred twenty-fourth section
did not, after such adoption, authorize the Court to set apart
any homestead at all. We speak now only of the Probate
Act, and have no reference to the provisions of other
Acts. In 1861 the Legislature amended section one hundred
twenty-one, and enlarged the scope of the category therein
provided for. The section, as amended, authorized the Court
to set aside all personal property by law exempt from execu-
tion, "and the homestead, as designated by the general
Homestead Law, or by section one hundred twenty-four
of this Act." There can be no doubt that this authorized
the setting aside of the homestead in connection with, and
additional to, the personal property exempt from execution.
Reference is only made to section one hundred twenty-four,
to show what might be set apart as a homestead, not to
show when it might be set apart. After the amendment,
section one hundred twenty-one operated as a repeal of
the limitation implied from the language of the first clause
of section one hundred twenty-four to cases where there was
an exemption law in force, and covered the whole ground;
and the only use of the fifth clause of the section was to indi-

cate what might be set off as a homestead. It would, doubt-less, have tended to perspicuity to have amended section one hundred twenty-four, by omitting the fifth clause, and defined the homestead to be set apart in section one hundred twenty-one; but the Legislature did not adopt that mode, and as it is, the intention is apparent. The amendment of 1866 changes the phraseology, and adds a clause for the pro-tection of lienholders. While the change in the phraseology, perhaps, renders the sense a little more obscure, a careful consideration will show, that it was intended to set apart the homestead in addition to personal property exempt from execution, and that if the deceased has left property capable of being made a homestead, "one shall be set apart, * * * whether the same has been recorded and dedicated as such or not, as provided by section one hundred twenty-four," that is to say, as in that section provided in respect to the character, quantity, and value of the land to be set apart. There was, manifestly, no intention of returning to the limit-ation first adopted in 1851.

We think the Probate Court was authorized to set apart the lot in question for the use of the widow.

Order affirmed.