JAMES WHITTLE, plaintiff in error, *vs.* BENJAMIN SAMUELS *et al.*, defendants in error.

1. Where a house and lot in a village had been set apart to Walton as a homestead under the constitution of 1868, and sold under judgments against Walton, rendered in 1860, and the money is in court for distribution, and is claimed by the judgment creditors, and where the homestead had been sold after Walton's death by his wife, with the approval of the ordinary, the executor of Walton assenting thereto and joining in the deed by the authority of the will, to one Baron, and Baron's wife had a homestead set apart therein, and she and her husband, the ordinary approving, sell to Whittle, and Whittle claims $500 00 of the money on the ground

Whittle *vs.* Samuels *et al.*

that he bought the land for value, that Walton's estate is insolvent, and that he is subrogated to Walton's right to have $500 00 of the fund set apart to him under the old exemption law:

*Held,* that the wife of Walton, after his .death, had no authority to part with the homestead, it being for the sole use of her and her children under the constitution, and the law nowhere providing for its sale by her; therefore, Baron took no title from her, and Whittle none from him.

2.  The policy of our law is not to alienate homesteads, and the statutes relating thereto will be strictly construed, and the rights of the purchaser will be closely watched and never enlarged.

3.  The clear legal right of a judgment creditor to the fund he has brought in court, and on which he has an undoubted lien in law, will not be forced to make way for a vague and uncertain equity—if, under the facts, any equity at all—especially on a money rule, where all the parties in interest in regard to the asserted equity are not before the court.

Homestead.  Equity.  Money rule.  Subrogation.  Judgments.  Parties.  Before Judge JAMES JOHNSON.  Talbot Superior Court.  March Term, 1875.

Reported in the opinion.

LITTLE & CRAWFORD; BLANDFORD & GARRARD, for plaintiff in error.

WILLIS & WILLIS; E. H. WORRILL, for defendants.

JACKSON, Judge.

Samuels and others obtained judgment against Walton in 1860, and levied the execution issued thereon upon a parcel of land in the village of Geneva, as his property.  The land was sold and the money brought into court for distribution.  It appears from the record that Walton had had a homestead set apart in this land, and died.  After his death, his widow, with the approval of the ordinary, sold it to Baron.  Baron's wife had a homestead set apart in it, and she and her husband sold it to Whittle, who claims $500 00 of the fund, because Walton, he says, would be entitled to hold that much of the fund under the old exemption law, and because he is subrogated to all the rights of Walton.  The court ordered

the money paid to the judgment creditors. Whittle excepted, and now assigns this ruling of the court for error.

1, 2. We think that the policy of the state, as gathered from the constitution and laws, is not to encourage the sale of homesteads. By the constitution it is made the duty of the general assembly to enact laws for the full and complete protection and security of homesteads to the sole use and benefit of the family of the debtor: Code, section 2135. The law enacted to carry out this constitutional provision, declares that such property shall be for the use of the wife, or widow, and children: Code, section 2020. The great object is to secure a fixed home for the family, and it is not the policy of the law to encourage the alienation of that home. Can the wife, after the death of her husband, sell it even with the approval of the ordinary, and does the title pass? Could Mrs. Walton sell to Baron, and if she could not, of course the title of Baron and wife to Whittle fails, and he has no rights of subrogation or otherwise. The law provides that the husband and wife may sell it: Code, section 2025, but we are not aware of any law which allows his wife to sell it after his death, though the executor of the husband join in the deed, and be authorized by the will to do so; and we think the law in regard to the alienation of homesteads should be strictly construed as against the policy of the state and the main object of the law. The minor children have rights, and creditors have rights in remainder, which are endangered every time there is an alienation of the home. There being no law to authorize the sale by Mrs. Walton, Whittle has no right to any part of this money. Besides, we think, any such subrogation of rights in the purchaser would encourage the alienation of the home, and therefore we are reluctant to extend the doctrine to such cases. Nor is there any evidence that Baron is insolvent and his warranty to Whittle not good, and therefore there is no need of his being subrogated to Walton's equity to get his money.

3. In any event, before the right of subrogation could be applied, all the parties in interest should be brought before

the court that the rights and equities of all, after a full hearing, might be examined and passed upon. Neither Mrs. Baron and children, nor the creditors of Baron, nor Mrs. Walton and her children, were before the court, and to allow Whittle to claim and take this money in this case on a mere rule to to distribute, without giving all an opportunity to be heard, would, we think, set a very bad precedent. The legal status of the judgment creditor is perfect, his lien undoubted, and to permit an equity so uncertain and vague as this is, even were all other objections out of the way, to override his plain legal right, would be to make equity not follow, but overthrow the law.

Judgment affirmed.