McCloy & Trotter v. Arnett.

# McCloy & Trotter v. Arnett.

1. HOMESTEAD: *Right of infants in; Ejectment.*
    Under the constitution of 1868 the exemption of the homestead from sale for debt descended to the widow and infant children of a deceased debtor; and after the termination of the widow's right, by death or re-marriage, the infant children have such an estate and right of possession as will support an action of ejectment against any one in possession, who does not hold under a better title than their father.

2. SAME: *Liability of purchaser of.*
    A purchaser of a decedent's homestead, at a probate sale, must take notice of the minor's right; and if he use the homestead for his profit or convenience, must account to the minor for the rents.

3. SAME: *Power of probate court to sell reversion in.*
    Under the constitution of 1868, the reversionary interest in a decedent's homestead, after the termination of the homestead rights of his widow and infant children, could not be sold for payment of his debts, and an order of the probate court for the sale of the homestead, subject to the homestead right of the widow and children, was without jurisdiction and void.

4. INFANTS: *Not prejudiced by admission.*
    An infant can not be prejudiced by admissions of his guardian or attorney.

5. EJECTMENT: *Compensation for improvements.*
    In ejectment as well as in equity, a defendant may set off against the claim for rents the value of his improvements made in good faith, believing himself to be the owner of the premises, to the extent that they have enhanced the rents.

APPEAL from *Drew* Circuit Court.
Hon. J. M. BRADLEY, Judge.

*McCain & Crawford* and *Z. T. Wood* for Appellants.

The homestead of a deceased debtor, under the constitution of 1868, was not entirely exempt from the payment of his debts. The exemption was to last during widowhood and "during the minority of the children." Subject to these temporary rights the land occupies the same position as other

lands. The sale of lands subject to a life estate is as old as the common law.

When a widow has a homestead in her own right, neither the widow nor children have any homestead rights in the lands of the late husband and father. *45 Ark., 340.*

The dower right of the widow is superior to the homestead right of the children. *37 Ark., 302.* It is prior in point of time, as it vests at the time the husband becomes seized.

*U. M. & G. B. Rose* for Appellants.

The case arose under the constitution of 1868, and by its provisions the rights of the parties hereto must be determined.

That constitution confers upon "a married man or head of a family" no new or hitherto undefined estate in land. It simply creates an exemption from forced sale, under execution or otherwise, of any land owned by him, after he has once impressed it with the character of a homestead during his life. All the *indicia* of ownership still exist. He may live on it or not, as he pleases. *Brown v. Watson, 41 Ark., 309; Euper v. Alkire & Co., 37 Ark., 283; Tomlinson v. Swinney, 22 Ark., 400.* He may alienate it. *Stanley v. Snyder, 43 Ark., 429.* He may use it in any manner he sees fit. *Klenk v. Knobel, 37 Ark., 298.* But under that constitution the creditor always had recognized rights in the homestead of his debtor. It was subject to the lien of any judgment that the creditor might recover against him, and so soon as it passed out of his hands the lien might be enforced. *Jackson v. Allen, 30 Ark., 110; Moore v. Granger, Id., 574.* And at his death his exemption ends altogether. If the personalty of the debtor is insufficient, the homestead may be subjected, and the purchaser at administrator's sale gets all the title which the deceased debtor had.

But the constitution of 1868 placed the homestead under an additional charge, viz: As a homestead for the widow and

McCloy & Trotter v. Arnett.

children under certain conditions. It could not be said that any estate was thus created in the land. If so, it was, at most, a conditional life estate in the wife, or a determinable estate for years in the children. It is not a continuation of their father's estate, but a particular interest vested in them by the constitution. Their interest is independent of the ownership of the land, and cannot be affected by a conveyance of it. If plaintiffs depend upon their rights under the homestead exemptions for the maintenance of this action it must be dismissed. They are not parties in interest, for their rights are expressly saved by the order of sale. The husband holds the freehold, which cannot be alienated at forced sale. The widow has only the right to occupy for life upon condition. The interest of the children either follows that of their mother, or is of a like character, being only the usufruct of the premises for a determinable number of years. After the death of the debtor the freehold descends to the heirs, subject to the widow's dower, and the payment of the debts of the deceased. The homestead right of the widow and children cannot be defeated by a conveyance of it. An administrator's sale passes title to the reversion, and upon the divestiture of the homestead rights the title becomes perfect in the purchaser. *Thompson on Homesteads and Exemptions, sec: 635; Judge of Probate v. Simonds, 46 N. H., 368.*

*J. M. & J. G. Taylor* for Appellee.

The homestead is exempt from *sale* not only during the father's life but during the minority of the children. *Const. Ark., 1868, art. 12, secs. 3, 5.*

There is no question here as to whether the widow's dower right is superior to the homestead right of the children, but if there were the *homestead* right would prevail. *32 Mich., 380, 402; 5 Allen, 146; 11 Ib., 194; 21 Texas, 605; 68 Mo., 13.*

The probate court had no jurisdiction to subject the home-stead of a deceased person to the payment of his debts, during the minority of the children, and a sale of the reversion was void. *Act Dec. 8, 1852; Const. 1868, art. 12; Const. 1874, art. 9, sec. 6; 29 Ark., 280; Ib., 633; 37 Id., 316; Acts 1873, p. 240; Thomp. on Homest. & Ex., sec. 635; Freeman Void Jud. Sales, sec. 35.*

That the homestead reversion cannot be sold, see *53 Ala., 452; 23 Cal., 415–18; 12 Cal., 114; 65 N. C., 447; 60 Ill., 281; 66 Id., 224.*

The minors could maintain ejectment; *Thomps. on H. & Ex., sec. 622, and authorities supra,* and are entitled to recover rents. *37 Ark., 316; Mansf. Dig., sec. 2637.* And they cannot be mulcted for improvements thereon. *Thomps. on H. & Ex., sec. 552; 29 Ark., 280; 37 Id., 316.*

The widow cannot so sell the homestead as to pass such title to a stranger that he would be entitled to any part of the property on partition, nor so as to give him any interest in the rents. *39 Ark., 161; 10 Fed. Rep., 601.*

The widow's interest terminated upon her marriage. *Const. 1868, art. 12, secs. 4, 5.* The assignment of the dower in the homestead does not affect the children's rights.

The appellants can only claim an offset against the rents for the *increased* rents and profits, which are directly traceable to the permanent improvements placed upon the lot. *51 Ala., 400; Jones on Mortg., secs. 1126, 1130.*

They cannot improve the minors out of their estate.

The appellants must have taken notice of appellee's rights. They could not have believed they were the owners, under color of title even, and thus entitled to the benefit of the bet-terments act. Their title being void, they cannot recover for

·improvements against an infant. *85 N. C., 184; 84 Id., 479; 15 Texas, 563; 117 Mass., 360.*

*M. W. Benjamin amicus curiæ.*

The probate court had no jurisdiction to order the sale of a homestead, or the reversionary interest in the same, during the minority of the children, and a sale made thereof is void. *Const. 1868, art. 12, sec. 5; 27 Ark., 235; 38 Texas, 487; 45 Cal., 433; 35 Id., 310; 75 N. C., 430; 25 Wis., 525; 29 Ark., 633; 37 Id., 316; Kirksey v. Cole, Mss.*

SMITH, J. The minor children of Samuel F. Arnett, deceased, brought ejectment for a town lot, which had been their father's homestead. The title of defendants was acquired from Arnett's widow. She had applied to the probate court for an assignment of dower in certain real estate, owned by her husband during coverture, and alienated by him without her consent in legal form; and also for a reservation of homestead in the town lot. Her prayer for homestead was rejected; in lieu of which dower was admeasured to her in the homestead premises, the line passing through the center of the hall of the dwelling house. In 1873, Arnett having died in the year preceding, the circuit court, then exercising probate jurisdiction, had, at the instance of creditors, directed the administrator to sell this lot, subject to the widow's dower and homestead. At this sale the widow became the purchaser of the reversionary interest, and the sale was approved and a conveyance made to her. She afterwards remarried, and she and her husband either mortgaged the lot to McCloy & Trotter or sold it to them absolutely, with the privilege of repurchasing within a given time. Under this deed the defendants obtained possession. And they further pleaded the betterments act.

28——47

To the pleas of title a demurrer was sustained, while the. pleas, asserting a lien on the lot for taxes paid and repairs made, were adjudged to be good. The issue of fact so raised was tried before the court without a jury, upon the following agreement as to facts:

"We hereby agree. that the following statement of facts may be read in evidence in this cause on behalf of the plaintiff:

"That Samuel F. Arnett was a married man, the head of a family, a resident and citizen of the state of Arkansas, and owned and occupied the premises in controversy, together with the dwelling and appurtenances thereon, as a homestead; and that said premises did not exceed one acre of land, and are worth not exceeding $2000; that the same was in the town of Monticello; that he so owned and occupied the same up to, and at the time of, his death in 1872; that he died leaving a widow and two minor children, viz: Lena and Jesse, the plaintiffs herein; that the plaintiffs, Lena and Jesse, are still under the age of 21 years; that his widow, Mary N. Arnett, remained unmarried until 1874, when she intermarried with one George Foreman, and took another homestead in her own right, (in 1878) carrying the children with her; and she is still living.

"That defendants, McCloy & Trotter, have had possession of said premises since the 24th day of January, 1883, receiving the rents and profits thereof, and are still in possession of same.

"That the rents for the year 1883 were reasonably worth $8.33 per month, and for 1884 and 1885, $12.50 per month; that they have not paid those rents to these plaintiffs.

"And in behalf of defendants, the following: Defendants, peaceably and in good faith, believing themselves to be the true owners, after they took possession made valuable and lasting improvements on the premises, of the value of $350, of which amount $125 was made on the dower part, and $225 on the remainder.

McCloy & Trotter v. Arnett.

"The rents for that claimed as dower are two-fifths of the rents of the whole. To redeem and pay taxes on the premises, the defendants expended $65.50 in currency.

"Signed:

"W. S. McCain,
"*For Defendants.*

"Wood & Hyatt,
"J. M. & J. G. Taylor,
"*For Plaintiffs.*"

The court found that the plaintiffs were entitled to the possession of all the premises sued for; but that the defendants were entitled to recover from the plaintiffs $70.50, being the excess of taxes and improvements over rents. Judgment was therefore given for the plaintiffs; but it was directed that no writs of possession issue until the aforesaid sum of money was paid by them.

The rights of the parties are governed by the provisions of the constitution of 1868 on the subject of homesteads. And whether that constitution be regarded as creating a new estate, unknown to the common law, or merely as protecting the minors' right of occupancy until they attain their majority; whether the reversion after the homestead is, or is not, subject to sale for the debts of the decedent; the pleas of title present no bar to the action. The exemption descends to the widow and infant children; and after the widow's right has ceased by death or re-marriage, the children, if still under age, have such an estate and right of possession as will enable them to support ejectment against any one in possession, who does not claim by title superior to that of their father. The purchaser, at a probate sale of the tract of land, to which the homestead of a deceased parent appertained, must take notice of the minors' right, and if he use the homestead for his profit, or convenience, must account to the minor for the rents. *Booth v. Goodwin, 29 Ark., 633; Altheimer v. Davis, 37 Id., 316.*

1. HOMESTEAD: Rights of infants in. Ejectment.

2. Liability of purchaser of.

3. Probate court can not sell reversion. . And here we might appropriately close the discussion of this branch of the case, having said enough for the proper disposition of this appeal, and leave the parties to settle by litigation after the plaintiffs shall have come of age, what estate the defendants have obtained in the premises, or whether they have obtained any. But as the question is squarely presented, and has been argued, and as the decision of it now, while the parties are before us, will save further litigation, we proceed to consider whether, under the constitution then in force, the reversionary interest of the estate of a deceased person could be ordered to be sold to pay his debts.

The language of the constitutional provision is: "The homestead of a family, after the death of the owner thereof, shall be exempt from the payment of his debts, in all cases, during the minority of his children, and also so long as his widow shall remain unmarried, unless she shall be the owner of a homestead in her own right." *Constitution of 1868, art. 12, sec. 5.*

From this and other sections of the same article, it is plain that the framers of that constitution did not intend to place the homestead entirely beyond the reach of creditors. The right is a temporary one, and upon its cessation, the homestead falls back into the residuum of the estate, and becomes subject to administration. *Cohn v. Hoffman, 45 Ark., 383–4, and cases cited.*

The provisions for the debtor's exemption is in these words: "Every homestead, owned and occupied by any resident of this state, shall be exempted from sale on execution, or any other final process from any court," except for certain privileged debts. *Ib., art. 12, sec. 3.* Notwithstanding a judgment was a lien on the homestead, and the debtor's right was practically limited to the enjoyment of the property as a homestead, he being unable to sell or leave it without forfeiting his privilege, yet so long as he resided on the land the creditors could not seize and

sell the reversion. *Grubbs v. Ellyson, 23 Ark., 287; Hughes v. Watt, 26 Id., 228; Greenwood & Son v. Maddox & Toms, 27 Id., 648; Lindsey v. Norrill, 36 Id., 545; Tucker v. Keniston, 47 N. H., 267; Wiggins v. Chance, 54 Ill., 175.*

*Black v. Curran, 14 Wallace, 463,* professing to follow the local law of Illinois, decided that the fee in the homestead tract could be sold under execution, subject to the debtor's right of occupancy, and that the purchaser took the absolute title, when the homestead right ceased. But in *Hartwell v. McDonald, 69 Ill., 293,* it is said that the supreme court of the United States had wholly misconceived the Illinois statute and the decisions construing it. And it may be regarded as settled law that an execution sale of a homestead, when the debtor claims his exemption, if he is required to claim it, is void, and has no effect on the title beyond casting a cloud over it. *Freeman on Executions, sec. 239.*

Now there can be no distinction between a forced sale of the debtor's homestead in his lifetime and of his widow's and children's homestead after his death. The constitutional inhibition is as peremptory in one case as the other. The term is used throughout in its defined legal sense—the place of a house or home—that part of a man's landed property which lies about and contiguous to his dwelling house, with the improvements and appurtenances. *Tumlinson v. Swinny, 22 Ark., 400.*

And so the homestead act of 1852 was construed in *Booth v. Goodwin, supra.* The effect of it was declared to be to suspend the rights of creditors until the youngest child came of age.

But the language of the constitution is still more unequivocal than the act of 1852. This court has repeatedly announced that an administrator has no interest in the lands of his intestate and no control over them except to subject them to the satisfaction of general creditors. It is a corollary from our admin-

istration statutes. Now the constitutional provision means pre-cisely what it says—that the homestead of the deceased debtor shall be exempt from liability for his debts during the minority of his children.

Such is also the legislative interpretation of the constitution, as may be seen by reference to the act of April 25, 1873, which makes it a misdemeanor, punishable by fine and imprisonment, for an administrator to attempt to sell the homestead, after it has been reserved for the benefit of the widow and children.

Under that constitution then, neither the probate court, while it was in existence, nor its successor, the circuit court, had any jurisdiction to order the sale of the homestead of a decedent, for the payment of ordinary debts contracted since its adop-tion, until after the termination of the homestead right. Nor would the purchaser at such sale take any title as against the minor children. The homestead was not assets in the hands of the administrator. The authority of the court was limited to the determination of such incidental questions as might arise upon the segregation of the homestead tract; for example, whether the land was impressed with the homestead character by the parent, whether it exceeded the prescribed quantity or value, whether the children were now of age, etc. And an erroneous determination of such matters must have been cor-rected by appeal or writ of error. But an order of sale of a parcel of land, as in this case, which is shown by the petition, and the order itself, to have been the residence of a deceased head of a family, is an absolute nullity. *Yarboro v. Brewster, 38 Texas, 397; Hamblin v. Warnecke, 31 Id., 91; Ruttenberg v. Pipes, 53 Ala., 452; Tompkins' Estate, 12 Cal., 114; James' Estate, 23 Id., 415; Poe v. Hardin, 65 N. C., 447; Wolf v. Ogden, 66 Ill., 224; Estate of Busse, 35 Cal., 310; Schadb v. Heppe, 45 Id., 433; Hinsdale v. Williams, 75 N. C., 430.*

We know of no authority to the contrary, except *Judge of Probate v. Simonds, 46 N. H., 363.* There the administrator sold

the estate, describing it as subject to the widow's right of homestead, and the widow became the purchaser. It was said that the sale passed title, subject to the widow's homestead, and it did not change the legal effect of the sale that she happened to be the purchaser. *Evans v. Evans, 13 Bush., 587,* can hardly be considered an authority on the other side of the question; because, according to the note to *Sec. 549* of *Thompson on Homesteads and Exemptions,* the statute of Kentucky, so far from prohibiting a sale under such circumstances, explicitly provided that "the land may be sold, subject to the rights of the widow and children, if a sale is necessary to pay the debts of the husband."

It is true that a reversion or remainder in land may be sold under execution. But this is by virtue of a statute, not in opposition to it. To make the cases parallel the statute should forbid the sale of estates in expectancy.

Nor does it affect the result that McCloy & Trotter have a conveyance of all the widow's interest in the premises, including her estate in dower, which had previously been set out to her. The homestead right of the children in the premises, until they arrive at full age, is superior to the right of the tenant in dower conveyed to a third person. *Loeb v. McMahon, 89 Ill., 487; S. C. 8 Cent. L. Jour., 492; Hannon v. Sommer, 3 McCrary, 126; S. C. 10 Fed. Rep., 601.*

The homestead estate is created equally for the use of wife and children, and none of them can do an act that will impair or prejudice the rights of the others. *Johnston v. Turner, 29 Ark., 290.* Dower could not be carved out of the homestead premises so as to defeat the right of the minor children to occupy and enjoy. *Trotter v. Trotter, 31 Ark., 145; Kirksey v. Cole, 47 Id.*

The law does not favor the alienation of homesteads. The minor children, and after them the creditors, have rights which

are endangered by every such transfer. *Whittle v. Samuels,
54 Ga., 548.*

This relieves us of the necessity of inquiring whether,
prior to the act of February 15, 1877, *Mansfield's Digest, secs.
188–92,* a sale of lands could be ordered on the petition of
creditors. Before the passage of that act, the administrator
alone was authorized to present such a petition. Mr. Freeman,
in his *Monograph on Void Judicial Sales, sec. 10,* says it is a
jurisdictional defect to order the sale on the petition of a per-
son who is not competent to present it.

4. Infant not prejudiced by admissions of guardian or his attorney.

It was a dangerous concession, in the agreed statement of
facts, that the defendants had made improvements in good
faith, believing themselves to be the true owners of the lot.
The deed under which they took possession is absolute in
form. The contemporaneous contract for redemption was not
produced; neither was any evidence offered that their vendors
were indebted to them at the time, and continued to be indebted
to them after the sale. Hence we must conclude that the
transaction was a defeasible purchase, and not a mortgage.
But neither the guardian nor the guardian's attorney can make
any admissions to the prejudice of the ward. *Evans v. Davis,
39 Ark., 235; Moore v. Woodall, 40 Id., 42; Pinchback v. Graves,
42 Id., 222.*

And the recital in the deed of the administrator to Mrs.
Arnett, that the sale and conveyance were subject to the wid-
ow's dower and homestead right, was probably sufficient to put
the defendants upon inquiry whether Arnett had left any infant
children surviving him, and what their rights in the premises
were.

5. Compensation for improvements.

But be this as it may, minors can not be improved out of
their homestead. The constitution gave them the unqualified
right, out of high considerations of public policy; and the leg-
islature could not annex conditions to its enjoyment. Other-

wise any disseisor, entering under semblance of title, might effectually deprive them of their estate by placing upon the land improvements of greater value than their rents could amount to during the term of their occupancy. Compare *Andrews v. Melton, 51 Ala., 400.*

The defendants are entitled to set off their improvements against rents only to the extent that by the expenditure of their labor and money they have enhanced the rental value of the land. In other words, they are not to be charged with the increased rents which are directly traceable to their own reparations and meliorations, but only such rents as the property would have yielded without the improvements. The additional profits, or income from the improvements, are not taken from the owner's land, but spring from an independent source, to-wit: the labor of the defendants. *Sedg. & Wait on Trial of Land Titles, sec. 678; Jackson v. Loomis, 4 Cowen, 168; Nixon v. Porter, 38 Miss., 401; Latum v. McClellan, 56 Id., 352; Dungan v. VonPuhl, 8 Iowa, 263; Wolcott v. Townsend, 49 Id., 456; Taylor's heirs v. Whitting's heirs, 9 Dana, 399.*

The amount paid in taxes and in redeeming from tax sales, is also a proper deduction to be made from the gross rents of the property. It has been held that a plaintiff, after a recovery in ejectment, can not be compelled to refund to the defendant the amount of taxes paid by him while he was in possession. These decisions are rested upon the doctrine that such payments were voluntary, and that no action can be maintained for money paid for the use of another, except upon proof of a previous request, express or implied, or a subsequent assent or sanction. *Homestead Co. v. Valley R. R., 17 Wallace, 153; Napton v. Leaton, 71 Mo., 358.* But taxes are a charge upon the land, and must have been paid by the plaintiffs had they been in possession. Consequently they should be taken into account in estimating the actual damages which the plaintiffs have sustained by the wrongful withholding of possession by

the defendants. *Sedgwick & Wait on Trial of Land Titles,* *sec. 688, and authorities cited.*

It may seem like an innovation to admit such equitable defenses in mitigation of damages, independently of statute. In *Porter v. Doe, 10 Ark., 186,* there is a dictum of Mr. Justice WALKER, that the right to set off valuable and lasting improvements made by the defendant in ejectment, in good faith and before notice of the adverse claim of the plaintiff, existed at common law. On the other hand, in *Horsley v. Hilburn, 44 Ark., 478,* it is intimated that it is only permissible in equity, where the plaintiff seeks the aid of the court to establish an equitable title, being imposed as a condition of interference. In *Rector v. Gaines, 19 Ark., 70,* the question arose under a special statute; and the other cases that we call to mind, in which the principle is recognized by this court, have been cases in chancery: *Watkins v. Wassell, 15 Ark., 73; Cunningham v. Ashley, 16 Id., 181; Marlow v. Adams, 24 Id., 109; Jones v. Johnson, 28 Id., 211; Summers v. Howard, 33 Id., 490; Brewer v. Hall, 36 Id., 353.*

The policy of the common law was averse to making any allowance to a person adjudged to have held the possession of land, without right or title, for his labors and expenditures in improving the property, during the period of his wrongful occupancy. Nevertheless, as early as *Coulter's case, Coke's Rep.,* it is said, by way of argument and illustration, that the disseisor, upon a recovery against him, may recoup the damages to the value of all that he has expended in amending the houses. And in *Green v. Biddle, 8 Wheaton, 1,* it is laid down, as a rule of the common law, that the disseisor, if he be a *bona fide* occupant, may recoup the value of the meliorations made by him against the claim of damages. And in America generally it has been held that the action for mesne profits, whether prosecuted separately, after a recovery in ejectment, or in conjunction with ejectment, is essentially an action *ex æquo et bono,*

McCloy & Trotter v. Arnett.

in which every equitable defense may be set up, this feature of the action being borrowed from the chancery practice on bills to account.   *Sedg. & Wait on Trial of Land Titles, secs. 648, 690; 3 Sutherland on Damages, 349; Murrey v. Gouverneur, 2 Johns. Cas., 441, per* Kent, J.

Especially is this so in states which have adopted the reformed procedure.   Our code of practice provides that "the defendant may set forth in his answer as many grounds of defense, counter-claim and set-off, whether legal or equitable, as he shall have."   *Mansf. Dig., sec. 5033.*

Upon the reversal of a common law case, we usually send it back for retrial, although *Section 1313 of Mansfield's Digest* authorizes us to affirm in part and reverse as to the rest, or to affirm as to one defendant and reverse as to another, or to modify the judgment.   And this power has been frequently exercised.   *Trieber v. Stover, 30 Ark., 727; Brown v. State, 34 Id., 232; L. R. & Ft. S. Ry v. Miles, 40 Id., 298; Shirey v. Cumberhouse, 41 Id., 100.*

Here is no issue to be tried.   The value of the annual rents and the amount of the taxes and repairs are ascertained by the agreed statement of facts, which is for this purpose in the nature of a special verdict.

No good end could be subserved by a second trial.   We, therefore, affirm the judgment awarding the possession of the premises in controversy to the plaintiffs, and reverse so much of the judgment as denies to them a writ of *habere facias possessionem* until they shall have paid $70.50 to the defendants, and we remand the cause with directions to enter a judgment in favor of the plaintiffs against the defendants for the mesne profits, since the 24th day of January, 1883, down to the date of the judgment, if the defendants shall then be in possession, or down to the time of yielding possession, if they shall have before surrendered possession, at the rate of $8.33 per month, less $65.50, the amount of taxes paid by them, and less also any sum that may have been paid for taxes since the trial.