ESTATE OF WILLIAM ARTHUR GREEN, DECEASED.

[No. 5,719; decided April 7, 1888.]

Homestead—Residence of Deceased—Conclusiveness of Finding.—
Where, upon the admission of a will to probate, the legal residence
and domicile of testator is found as a fact, and certified and judi-
cially determined, the question is placed outside the pale of contro-
versy thereafter. So held, upon an executor's opposition to an ap-
plication for a homestead by the testator's widow.

Homestead—Nature of Right.—The right to a homestead is wholly
statutory; it cannot be asserted as a natural right. The law-making
power is competent to repeal the provisions of the statute regu-
lating the right, and thereafter homesteads would be unknown.

Homestead—Probate and Voluntary Distinguished.—There is a
distinction between a homestead under section 1262, Civil Code, and
the homestead selected by the court in the administration of a de-
cedent's estate. The latter is governed wholly by the provisions of
section 1465, Code of Civil Procedure. In the case of a homestead
selected in the decedent's lifetime, the claimant's title accrues by
survivorship; as to a homestead selected in the administration of
decedent's estate, the claimant's title accrues only upon the de-
cree of the court or judge setting it apart.

Homestead.—The Probate Court has no Discretion to deny an ap-
plication for a homestead by the family of a decedent, presented
under section 1465, Code of Civil Procedure.

Homestead—Testamentary Power.—The power or duty of the court
to set apart a homestead for the family of a decedent is not lim-
ited by the fact that the decedent disposed of his property by will.

Homestead.—The Power of Testamentary Disposition is Given and
defined by statute, and is subordinate to the authority vested in the
probate court to appropriate property for the support of testator's
family, including a homestead, and for the payment of debts.

Homestead.—The Right of a Widow to have a Homestead Set Apart
to her from the estate of her former husband must be determined
from the facts as they exist at the date of the action of the court.

Homestead.—The Executor's Answer to the Widow's Application
for a homestead alleged that two adult daughters (one being married),
referred to in the widow's petition, were always considered and
treated as part of the decedent's household and family. The court
ignored this claim for the daughters, and set apart the homestead
to the widow alone.

Homestead.—In this Case the Widow Applied to have a Home-
stead set apart to her, and the executor answered, setting up that

decedent's residence and home was in England, where he died and left a homestead, which he devised to his wife and daughters. The court found on the probate of the will here that the decedent had a domicile and legal residence in California, and was only temporarily in England for his health; and held that the applicant, being the decedent's widow at the date of the application, and a resident of the state, and there being property suitable for a homestead, all the conditions required by the statute existed to entitle her to a homestead.

**Homestead—Separate Property.**—In this case the court ordered that the property, being decedent's separate estate, be set apart only during the applicant's widowhood.

**Homestead—Value of Premises.**—In this case the court held that the value of the premises ordered set apart as a homestead should be taken as of the date of the application; any subsequent increase in value being immaterial.

This was an application by the widow to have a homestead selected and set apart by the court. The executor, R. H. Lloyd, filed two answers to the petition; the first answer was the same as the second one, except that it left out an important special defense attempted to be made by the executor, viz.: (1) that it was the intent and expressed wish of the testator that the legacy made ·by his wife should be in lieu of all rights she might claim against his estate; (2) that it was testator's express desire that his wife should have a homestead out of his estate. After argument upon a motion and demurrer addressed to this special defense, Mr. W. S. Wood, counsel for the executor, asked leave to withdraw the answer, and filed a new one (being the one referred to in the court's opinion), which omitted these special allegations. Throughout the entire proceedings had on the homestead petition, the attitude taken by the executor, Lloyd, was objected to, it being claimed that the positions he took, and· the defenses he attempted to set up, and the manner in which he and his counsel contested the matter, were that of a partial, prejudiced and interested party, and that he really represented the daughters of testator, who were opposed to the widow; that an executor's duty required him to be impartial and take no sides in a controversy, further than to offer such information as he might have, for the benefit and instruction of the court; and that he was not interested to defeat the applicant out of a homestead, where he made no denial of

her status as a widow, or the fact that no homestead had been actually selected in decedent's lifetime. The court, in its opinion below, calls attention to this objection made to the attitude of the executor; but elects to consider the facts independently of the objection.

After filing of the opinion the question came up on presentation of findings prepared for the widow, as to what the extent of her estate should be, and the court refused to grant any other limitation than for widowhood.

The executor further opposed the setting apart of the property selected by the court, upon the ground that since the appraisement the land had increased in value. But the court held that the date of the filing of the application was the period to be considered, and not the time of setting apart.

Timothy J. Lyons, for applicant.

William S. Wood, for executor, opposing.

COFFEY, J. This is an application by Julia Green, the widow of William Arthur Green, deceased, to have a homestead set apart by the court for her use.

The petition recites that letters testamentary were issued out of this court on December 7, 1886, to R. H. Lloyd, one of the executors named in the last will of decedent, who immediately entered upon the discharge of his duties as such executor, and has ever since continued to act in that capacity; that the executor has published notice to creditors according to order of the court; that he has made and returned herein the inventory and appraisement as required by the statute; that it appears by the said inventory and appraisement that the whole estate of the decedent is about $270,000, yielding a monthly income of about $1,200 net; that the executor claims the whole estate to be separate property of decedent, but as to this the applicant has no information other than the statement of the said executor; that the petitioner is the surviving wife of the decedent, and that his family consisted and consists of herself alone, who was, at the date of the petition, temporarily residing in England (but who has since

returned to California, and was at the time of the hearing actually residing in San Francisco). The decedent also left him surviving two daughters, Amy Eliza Green and Frances Peddar, wife of Sydney Hampden Peddar, of London, England, both of whom are above the age of legal majority by the law of California, as well as by the law of England, in which last-named country they are both resident, according to the information and belief of the applicant; that at the time of his death, and continuously and uninterruptedly for many years immediately prior thereto, the decedent was a resident of and had his domicile in the state of California, as well also that of his family, which family consisted at the time of his death solely of himself and the petitioner, but that he died in England, where he was then temporarily residing on account of and for the benefit of his health; that his surviving wife, the petitioner, constituting his said family, has not changed the California domicile, which she had and retained with decedent at the time of his death, but has always and continuously retained and still retains her California domicile aforesaid, and at the date of the hearing was actually a resident and domiciled in the city and county of San Francisco, State of California; that no homestead was selected, designated or recorded in the lifetime of the decedent, either by him or by the petitioner, and that no homestead has been selected, designated or recorded, or set apart by this court out of the estate of the decedent now being administered upon herein, nor has any property of any kind been set apart or ordered set apart by this court out of decedent's estate. The petition proceeds to set forth certain parcels of property alleged to be suitable for the purposes of homestead, out of which she prays the court to select, designate and set apart to her such homestead. To this petition the executor, R. H. Lloyd makes answer in substance: That he was the attorney for the decedent for a long time prior to his marriage to the applicant and up to the time of his death, and as such attorney was familiar with the property owned by the decedent; that all said property was owned and possessed by said deceased prior to his marriage with the applicant; that the family of the

decedent did not consist solely of the applicant; that he had an unmarried daughter, Amy Eliza Green, and also a married daughter, Frances Peddar, whom he had always considered and treated as part of his household, and was constantly aiding and assisting in supporting and maintaining them, and said daughters and petitioner constituted and were his family; that the applicant is and has been ever since marriage a resident of England; that long prior to the death of decedent he purchased a homestead at a place called Wyresdale, in England, and fitted and furnished the same, and took up his residence there, and was residing there at the time of his death; that the decedent left a last will other than that admitted to probate by this court, specifying and concerning his property and effects in England, and in and by said last will he devised to petitioner and his daughters the said homestead with its contents, and that the said applicant was, at the time of filing her application herein, residing in said homestead in England, and that such was her home and her place of residence; but no homestead was designated or recorded in this state by the decedent, because of the selection of a homestead in England; and that pending these proceedings, and since the filing of the petition for a homestead herein, the said homestead in England has been sold and the applicant has received or is about to receive her portion of the proceeds of such sale. The counsel for the applicant objected to the interference of the executor in this application, insisting that, as executor, he had no part to play in this proceeding, and counsel still insists upon such objection; but the court has chosen to inquire fully into the facts, notwithstanding such objection.

The will admitted to probate in this court December 6, 1886, begins with the recital:

"I, William Arthur Green, a resident of the City and County of San Francisco, State of California, now temporarily in England, being of sound mind and disposing memory, do make and publish and declare this my last will and testament, in manner and form following: (1) I declare that all my property, be it real, personal or mixed, is my

separate property and estate, having been acquired by me prior to the marriage between myself and wife, Julia."

The instrument then proceeds to make various devises and bequests. The petition of R. H. Lloyd, one of the executors named in the will, for the probate thereof, filed November 17, 1886, alleges, among other things, that William Arthur Green died on or about the tenth day of November, 1886, in England; that at the time of his death he was a resident of the city and county of San Francisco, in said state of California (being temporarily in England at the time of his death); that he left estate in said city and county, consisting principally of real estate and a small amount of personal property. Upon the hearing on the sixth day of December, 1886, the court found as a fact, and so certified and judicially determined, that William Arthur Green died on the tenth day of November, 1886, in England, where he was temporarily for his health, and at the time of his death was a resident of the city and county of San Francisco. This finding and judgment places the question of the legal residence and domicile of the decedent at the time of his death outside the pale of controversy; and the question is, therefore, reduced to whether the fact of the actual residence of the deceased at the time of his death affects the status or impairs the rights asserted by the applicant. William Arthur Green was a native of England, but a naturalized citizen of the United States, and a pioneer of California, having resided here from the year 1849, and acquired very valuable possessions, mainly in city real property. It appears he was married twice, being separated by decree of divorce from his first spouse, the mother of the two children, Amy Eliza Green and Frances Peddar. In May, 1882, he departed from the state of California, in company with his second wife, the applicant, whom he had married almost immediately prior to the departure. He never returned to California. He and his wife never occupied any abode in common in this state. They went to England, where Mr. Green purchased a place and remained until he died. Counsel for the respondent claims that whether the decedent purposed to change his domicile is not involved in the present discussion, but

that it is enough for the purposes of this controversy to say that the decedent acquired and occupied a place of residence in England, which was designed to be permanent during his stay there, and that he and the petitioner used that place as their home at the time of his death; that they had no home or residence in California; they resided in England; and that the determination of the issue now before the court depends upon the fact of residence rather than that of domicile. Counsel contend that the right to homestead is wholly statutory; no one can assert it as a natural right. The legislature might repeal all the provisions of the act regulating the right, and thereafter homestead would be unknown. This is true. Counsel further contend that an examination of the provisions of the code and the numerous decisions in this state upon the question leads to the inevitable conclusion that residence is the controlling principle of the homestead claim; the idea of the foundation of all legislation and adjudication upon the subject is to protect from forced sale the home in which the family reside; it was designed at the outset to save from creditors the roof which covers the family, and upon that all homestead legislation has been founded, and that in view of all the legislature has done, and the courts have said, it must be conceded that the whole purpose and intent of both departments of the government have been directed toward the protection of the families of residents of the state; that it will be conceded that a nonresident cannot claim the benefit of a homestead; and that the first fact necessary to a declaration is residence upon the property; a temporary absence from the home at the time of the filing of the declaration destroys its force and does away the claim of exemption. Endeavoring to enforce his proposition, the counsel presents numerous cases; a good sample of which is Maloney v. Hefer (Cal.), 15 Pac. 763, in which the supreme court say: "It has been frequently decided by this court that to constitute a valid homestead the claimant must actually reside in the premises when the declaration is made. It is true they went away temporarily and were gone only about four months, but during that time they certainly did not actually reside on any part of the lot filed upon."

Counsel says it will be seen that the supreme court has drawn a very clear line between actual and legal residence. In the case cited the property claimed for a homestead was the legal residence of the family, and while residing there the wife executed the declaration, but before filing it she went away to visit friends in another county, and during the absence the declaration was filed, and the supreme court held that such filing in her temporary absence defeated the right.

Counsel says this decision points with great force the argument that residence, actual and in fact, is the cornerstone of the homestead, and he claims that the decision in Maloney v. Hefer is in direct pursuance of the general definition of homestead declared in the leading case of Gregg v. Bostwick, 33 Cal. 221, 91 Am. Dec. 637, from which it will be gathered that residence is the essential and primary fact upon which the right to a homestead is founded. Now, says counsel, it will be conceded that William Arthur Green could not, while residing in England, have filed any valid claim for a homestead covering any property in this state, and have thereby defeated the claims of his creditors, and the claim of the widow depends wholly upon the state of facts existing at the time of Mr. Green's death; her rights cannot be any greater than his were. She cannot be permitted to assert any claim to a greater protection than he enjoys; her rights all rest in the fact that she was his wife and is his widow; and whether she is entitled to a homestead, or must be refused one, depends on the status which he occupied at the moment of his death, and whether at that moment he could have claimed the right. In support of this view, counsel quotes from the Estate of Delaney, 37 Cal. 176, in which the supreme court said: ''The homestead and the tests by which it is ascertained are the same, whether the question arises between those claiming the homestead, or one of them and a vendee, a mortgagee, a creditor, or the heirs of the deceased husband or wife. There is not one homestead as against a creditor, and a different one, when the survivor asserts his or her claim, as against the heirs of the deceased.''

In the concluding portion of the opinion in the case just cited the court makes a suggestion, which counsel thinks of considerable importance in this discussion, as showing that the supreme court looked at this question in the light in which it is now sought to place it before this tribunal. There the widow had petitioned for a homestead, as in the present case, and the supreme court remarked: "It is proper to add, though the point is not made, that the petition is radically defective because it does not state that she and her husband were entitled to or held any land as their homestead at the time of his death."

It will be observed, says counsel, that the court distinctly holds that the petition for a homestead must show a right thereto existing at the time of the husband's death, and counsel claims that he has shown that residence is a necessary and material fact; then the result must follow that the nonresidence of the parties prior to the husband's death deprived them of the right; and such nonresidence continuing up to his death, must be held to deprive the widow of the right.

The decedent died testate. His will had been admitted to probate, and, by lapse of time for contest, its validity is no longer subject to question, and counsel insists that by the will he has made disposition of all his property, and that disposition is subject only to the rights of such persons as bring themselves clearly within the statutory provisions. The fallacy of counsel's argument is in the apparent assumption that there is no distinction between a statutory homestead and a probate homestead, all the cases cited by him involving the question of statutory homestead, under section 1262 et seq., of the Civil Code; but this application is brought under section 1465 of the Code of Civil Procedure, which provides that, upon the return of the inventory, or any subsequent time during the administration of an estate, if no homestead has been selected, designated and recorded, the court must, on its own motion, or on petition therefor, select, designate, set apart and cause to be recorded a homestead for the use of the surviving husband or wife and the minor children; or, if there be no surviving husband or wife, then for the use of the minor children. When application is

made that a homestead be set aside under this section, the court has no discretion in the matter, but must grant the application. Nor is the power or duty of the court in this respect limited by the fact that the decedent left a will by which he disposed of the property sought to be set aside. The power of testamentary disposition of property is conferred and defined by statute, is not paramount, but is subordinate to the authority conferred upon the probate court to appropriate the property for the support of the family of the testator, and for a homestead for the widow and minor child or children, as well as for the payment of the debts of the estate: Estate of Ballentine, 45 Cal. 696; Sulzberger v. Sulzberger, 50 Cal. 385; In re Davis, 69 Cal. 460, 10 Pac. 671.

The Matter of Davis, last cited, went to the supreme court upon appeal from this probate department, in which the homestead was set apart for the minor children of the deceased, notwithstanding the will, which directed that all the property should be sold and a portion of the proceeds given to her brother: See Estate of Bridget Davis, Deceased, No. 3,232, Superior Court, Department 9, Probate, San Francisco. Decree entered March 18, 1885, Coffey Judge. The section under which this application is preferred was construed In re Bowman 69 Cal. 244, 10 Pac. 412. This case of In re Bowman would seem to afford a complete response to the claim of the counsel for the opponent herein. The court, through Mr. Justice Ross, declared that this statute does not attach the condition that the decedent must have resided upon the premises before a given piece of property can be set apart for the use of the survivor, or, in case of his death, to the minor children of the decedent; but in express terms provides that if no homestead has been selected, designated and recorded (under the general homestead laws), or, in case the homestead so designated and recorded was selected by the survivor out of the separate property of the decedent, the decedent not having joined therein, the court must select, designate and set apart and cause to be recorded a homestead, etc. Such a homestead, as was held in the matter of the Estate of Busse, 35 Cal. 310, may be carved out of any property left by the decedent, which is capable of being made a homestead. In the Estate of Bo-

land, 43 Cal. 640, the court, construing the sections of the old probate act, which are now incorporated in section 1465 et seq., Code of Civil Procedure, through Mr. Justice Niles, said: ''That a probate homestead differs from a case of a homestead created during the existence of the community by a compliance with the provisions of the homestead act, the title to which vests in the wife upon the death of the husband, by right of survivorship. In the latter case the property becomes the property of the widow by operation of law. In the case presented it could only become hers by the decree of the court or judge.''

The right of the applicant to have a homestead set apart to her from the estate of her former husband must, therefore, be determined from the facts as they existed on the day when the order of the probate court was made. In the case of Higgins v. Higgins, 46 Cal. 265, the supreme court, speaking through Mr. Justice Crockett, held that a woman could claim a homestead out of her second husband's estate, although one had been set apart to her out of the estate of her first husband. Said the court: ''It is said that if she can claim both she will be protected in the enjoyment of two homesteads at the same time—a result which, it is claimed, was not comtemplated by the statute. But it is to be observed that a homestead to be set apart under the probate act, for the use of the widow and minor children, is a mere reservation out of the property of the estate, for their benefit, and is for the use of the minor children as well as the widow. Under the general homestead act, however, the homestead goes to the wife alone, if she survives her husband; and her children by a former marriage would have no interest in it, while the children of her last marriage would have no interest in the homestead set apart from the estate of the first husband. Looking to the policy which dictated the two classes of homesteads, we think the fact that a homestead had been set apart from the estate of her former husband, for the use of Mrs. Higgins and her minor children, did not stop her from claiming a homestead out of the estate of her second husband.''

In the Estate of Moore, 57 Cal. 443-446, the supreme court, through Mr. Justice Myrick, said: ''The right to a

probate homestead, so called, is not the subject of sale. This court has already held that the status of the widow, at the time of the application, must be considered, and if she, by subsequent marriage, has ceased to be the widow of the deceased, she cannot have a probate homestead set apart to her. If a testator devised his entire estate, his separate property, his widow would still be entitled to a homestead; but if she were to execute a deed of all her interest in the estate, her grantee could not have a homestead set apart to him. If she should, after the conveyance, die or marry again, there would be no right of homestead to survive her or her widowhood. Before the action of the probate court no estate has vested in the family, so far as homestead is concerned. It is merely a right to have the court, as a part of the administration, set apart property; and not until such action can it be said that any estate has become vested, either at law or in equity. The right to have a homestead set apart is no estate, either in law or in equity. As the court said, in Bates v. Bates, 97 Mass. 395: The estate of homestead is one of a peculiar nature. It is a provision, by the humanity of the law, for a residence for the owner and his family.''

This opinion of Mr. Justice Myrick was subsequently confirmed unanimously by the court in bank, he being again the exponent of the law, and he draws a clear distinction between a statutory and a probate homestead, refusing to apply to the latter a section which he considered was designed for the former description of homestead, saying: ''We are therefore of opinion that the section does not apply to the case before us. It might be said that, even if the legislature intended that a right to apply for a probate homestead was the subject of bargain and sale, it was not intended that any less interest than the entire right should be acquired by a vendee; for, if one of the parties entitled to apply—say the mother of minor children—could sell her right, and her grantee applied, such grantee would be entitled to the possession of the homestead as against the mother, and would have a joint interest with the children, to the exclusion of the mother, which would be repugnant to the very idea of a homestead. It being the office of the legislature to provide

for a homestead, i. e., a place of home for a family, we cannot hold that a statute enacted for that purpose shall have the construction and effect of destroying the object in view.''

It appearing in the case at bar that the applicant, Julia Green, was, at the date of her application, the surviving wife and widow of the decedent, William Arthur Green, a resident of this state and county, and that there is property suitable for the purpose and adapted to the use of a homestead, she has fulfilled all the conditions which, under the law which she invokes, entitle her application to be granted; and it is so ordered. Let a decree be drawn and presented to the court according to the conclusion of this opinion.